CARTER, Judge.
The question presented is whether an employee was discharged because he asserted a claim for benefits under the provi *1208 sions of the Louisiana Worker’s Compensation Law.
FACTS
On June 2, 1982, a board fell from an overhead scaffold striking the plaintiff, Larry Moore, on his head and spine, resulting in a back injury. Initially, defendant, McDermott, sent Moore to Dr. Whitley for examination. Dr. Whitley referred the patient to Dr. Fitter, an orthopedic surgeon. McDermott voluntarily began payment of worker’s compensation benefits on June 3, 1982, in the amount of $399.00 per week. Although no classification is indicated in the record, this amount apparently constituted temporary total disability benefits. The benefits were paid without interruption until Moore’s discharge. At the time of the accident, Moore was a 32-year-old husband and father of seven children. He had begun working for McDermott on October 27, 1978, as a Paint Blaster I for $6.75 per hour. On June 2, 1982, Moore was engaged as a Paint Blaster A for $10.61 per hour.
On November 18,1982, Moore visited Dr. Fitter on a regularly scheduled appointment. Mrs. Moore was in attendance during this examination as she had been during several previous visits to Dr. Fitter’s office. During this examination, Moore complained of pain. Moore told Dr. Fitter that the pain would prevent him from performing his work function. During this examination, Dr. Fitter concluded that Moore was able to return to work on November 22, 1982. He based his conclusion on his objective examination and a written report of Dr. Cary, an orthopedic surgeon, who had previously examined Moore at Dr. Fitter’s request. Dr. Fitter testified:
Q. But you had no reason to disbelieve that he was experiencing at least the pain he reported to you?
A. I did believe he was experiencing some pain. I prescribed medicine for it.
Q. So you believed Mr. Moore at that time?
A. That he was experiencing some pain. Unfortunately, we had a difference of opinion on whether that amount of pain would keep him from working. It is common in my practice to send patients back to work who are still suffering from some degree of pain and they remain uncomfortable for a period of time, but I guess it is just my judgment based on my experience as to when a patient is sufficiently recovered that he can go back to work and work in some pain. I think many people do that every day work at a job while they are still sore.
At this point, a conflict in the testimony arises. The conflict centers upon Dr. Fitter’s opinion that Moore could return to work. Mr. and Mrs. Moore both testified at no time did the doctor tell them that Moore must return to work. They stated that the doctor merely told them to make an appointment for the next month. Conversely, Dr. Fitter testified he believed he notified the Moores that Mr. Moore must return to work on November 22, 1982. He bases his belief on notes written minutes later into the patient’s file and on a definite impression he maintains.[1]
Mr. Andy Maggio, Division Personnel Administrator for McDermott, testified he telephoned Dr. Fitter’s office on November 18th to receive an update on Moore’s condition. Mr. Maggio said he was told by Ms. Dottie Coates that Moore was released to commence work on November 22, 1982.[2]
Mr. Maggio called the McDermott “yard” with information of Moore’s release. On *1209 the morning of November 22, 1982, when Moore did not report for work, a decision was made to summarily discharge Moore from employment with McDermott. About two weeks later, Moore’s attorney wrote to McDermott requesting Moore be reinstated. This request was denied.
Plaintiff filed suit alleging that defendant had violated LSA-R.S. 23:1361(B) by terminating his employment because he asserted a claim for worker’s compensation benefits. After trial on the merits, a judgment was rendered in favor of McDermott dismissing plaintiff’s claim. Moore was ordered to pay all court costs, including a $250 expert’s fee to Dr. Jeffrey Fitter. He appeals from this judgment.
In his reasons for judgment, the trial judge stated that plaintiff failed to prove his case by a preponderance of the evidence. The record supports the finding that the plaintiff was terminated for failure to report to work on November 22, 1982. In explaining his decision, the trial judge said:
The Court feels that the plaintiff has not met its (sic) burden of proof. Had the plaintiff established the competent testimony of other employees or personnel of McDermott a definite pattern of how much time or how many days would lapse between not showing up for work and termination or the procedure involved, then the Court could very well see that a pattern of discrimination or even just a specific incident of discrimination was perpetrated upon the plaintiff.
LSA-R.S. 23:1361(B) provides:
No person shall discharge an employee from employment because of said employee having asserted a claim for benefits under the provisions of this Chapter or under the law of any state or of the United States. Nothing in this Chapter shall prohibit an employer from discharging an employee who because of injury can no longer perform the duties of his employment.
Therefore, to prevail on a claim for civil penalties pursuant to LSA-R.S. 23:1361(B), three elements must be established by the employee: (1) discharge; (2) an assertion of a claim for benefits under the Louisiana Worker’s Compensation law or under the law of any state or of the United States; and (3) a causal connection between the discharge and the assertion of a claim for benefits.
No real question exists as to the first two elements in this matter; therefore, the only issue remaining is whether there is a causal connection between the discharge and the assertion of the claim.
Additionally, LSA-R.S. 23:1361 is a remedial statute and is to be construed liberally so as to apply this statute in more situations than would be the case under a strict construction. Wiley v. Missouri Pacific Railroad Company, 430 So.2d 1016 (La.App. 3rd Cir.1982), writ denied, 431 So.2d 1055 (La.1983). There is a difference, however, between liberal construction and burden of proof. Wiley, supra, construes the statute liberally in that it extends the statute’s remedy to workers discharged for asserting FELA claims[3]. However, neither Wiley nor any other case shifts any burden of proof for these types of claims.
The burden in any civil matter is on the plaintiff to prove his case by a preponderance of the evidence. This is so unless and until the legislature says otherwise. The trial judge is charged with the duty of weighing the evidence to determine if the plaintiff has met his burden of proof.
*1210 In the case sub judice, the record shows a -lack of any competent evidence to establish that the plaintiff's termination was caused by his claim for worker’s compensation benefits. Andy Maggio, Division Personnel Administrator for McDermott, testified that it is McDermott’s policy to terminate any employee formerly receiving worker’s compensation benefits who has been released to return to work and does not return to work. Mr. Maggio had no personal knowledge of McDermott’s policy toward employee’s not receiving worker’s compensation who failed to come to work.
The plaintiff denies that he was informed by the company or his physician that he was able to return to work, much less that he was expected to return to work on November 22, 1982. As stated before, the doctor maintains otherwise. The company admits that it made no effort to contact the plaintiff regarding his return to work. Under the statutory scheme in existence at the time of plaintiff’s termination, the employer had no duty to inform the plaintiff that he was to return to work.[4]
Additionally, the record is devoid of any evidence indicating a desire on the part of plaintiff to return to work. Although this is not an element for an action under LSA-R.S. 23:1361, plaintiff’s lack of action in this case is difficult to understand. He made no attempt to find out from his physician when he was going to be released for work. Additionally, after learning of his termination, if he felt he was still unable to work, he could have taken advantage of the provisions of LSA-R.S. 23:1123. Under the statute as it existed at the time of his termination, the plaintiff could have petitioned the court to appoint a physician to examine him for the purpose of comparing that opinion with the opinion of the employer's physician.[5]
Once the employer had the report of the physician advising that the plaintiff could *1211 return to work and no controverting information or evidence, the plaintiff became subject to the “employment at will” provision of LSA-C.C. art. 2747. At that point, the employer was free to terminate the plaintiff without giving reasons.
In cases of this nature, it is difficult to determine when an employer has crossed the line from exercising its rights under LSA-C.C. art. 2747 to abusing the worker’s rights under LSA-R.S. 23:1361. This is a question of fact which must be determined by a trial judge just as any other fact. Great weight should be given to this factual determination of the trial court and such should only be reversed if manifestly erroneous. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring Co., 283 So.2d 716 (La.1973).
The trial court found that Moore had not established a causal connection between his discharge and his assertion of a claim for benefits. Therefore, the trial court concluded that Moore had not met his burden of proof. This is a finding of fact that we can overturn only if manifestly erroneous. We do not find that the trial court was manifestly erroneous.
Therefore, for the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.
COLE, J., dissents for reasons assigned.
LANIER, J., agrees with the report and will assign additional reasons.

. In a report to the Department of Labor, Office of Employment Security, dated December 20, 1982, Dr. Fitter stated that Moore was unable to work and was never released to return to work. Dr. Fitter later explained these statements were made solely to facilitate Moore’s acquiring unemployment insurance benefits and were not true representations of his physical condition. We note the report contains a clause reciting that false statements made in connection with the report are punishable as a misdemeanor.

. A written report from Dr. Fitter containing a complete explanation of his November 18, 1982 examination findings was not received by McDermott until November 29, 1982.

. The Federal Employer’s Liability Act, 45 U.S. C.A. § 51 et seq. (FELA), is a series of federal statutes which create a cause of action against employers for injuries suffered by employees on the job where any part of that employee’s duties further or substantially affect interstate commerce. Although styled as a liability act, the court in Wiley found the FELA to be “at least in part, compensatory in nature.” Wiley, supra at p. 1022. Having made that finding, this court went on to determine that the protection afforded to Louisiana workers under LSA-R.S. 23:1361 would be extended to Louisiana workers asserting FELA claims.

. LSA-R.S. 23:1201 was amended by Acts 1983, 1st Ex.Sess., No. 1, § 1 effective July 1, 1983. This amendment, particularly Part G, now establishes a duty to inform the Office of Worker’s Compensation upon modification or suspension of payments for any cause, but fails to provide a penalty for failure.
LSA-R.S. 23:1201 formerly read as follows:
Payments of compensation under this Chapter shall be paid as near as may be, at the times and places as wages were payable to the injured employee before the accident; however, when the employee is not living at the place where the wages were paid, or is absent therefrom such payments shall be made by mail upon the employee giving to the employer a sufficient mailing address; a longer interval, not to exceed one month, may be substituted by agreement without the approval of the court, but a longer interval than one month must be approved by the court.
LSA-R.S. 23:1201, as amended provides, in pertinent part:
G. Upon making the first payment of compensation and upon modification or suspension of payment for any cause, the employer or insurer shall immediately send a notice to the office, in the manner prescribed by the rules of the director, that payment of compensation has begun or has been suspended, as the case may be. Within fourteen days after the final payment of compensation has been made, the employer or insurer shall send a notice to the office, in the manner prescribed by the rules of the director, stating:
(1) The name of the injured employee or any other person to whom compensation has been paid, or both.
(2) The date of injury or death.
(3) The dates on which compensation has been paid.
(4) The total amount of compensation paid.
(5) The fact that final payment has been made. (Emphasis added)

. LSA-R.S. 23:1123 now requires that the plaintiff first make applications for the appointment of a neutral physician to the Office of Worker’s Compensation and provides as follows:
§ 1123. Disputes as to physical condition of employee; examination under supervision of the director
If any dispute arises as to the condition of the employee, the director, upon application of any party, shall order an examination of the employee to be made by a medical practitioner selected and appointed by the director or, upon the director's refusal, by the court. The fee of the examiner shall be fixed by the director in accordance with prevailing medical fees in the community for such examination and shall be paid in advance by the applicant. The medical examiner shall report his conclusions from the examination to the director and to the parties and such report shall be prima facie evidence of the facts therein stated in any subsequent proceedings under this Chapter.