481 So.2d 602 (1986)
Larry MOORE
v.
McDERMOTT, INCORPORATED.
No. 85-C-1314.
Supreme Court of Louisiana.
January 13, 1986.
Rehearing Granted February 20, 1986.
Gerald J. Martinez, Conner & Martinez, Metairie, for plaintiff-applicant.
R. Henry Sarpy, Jr., Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, for defendant-respondent.
CALOGERO, Justice
Plaintiff, a sandblaster/painter employed by J. Ray McDermott, Inc. between October 27, 1978 and November 22, 1982, filed suit against the Company, 1) alleging that in violation of La.Rev.Stat.Ann. § 23:1361(B) he had been fired for having asserted a claim for Louisiana Worker's Compensation benefits and 2) claiming a monetary civil penalty because of that discharge, as provided by statute (La.Rev. Stat. § 23:1361(C)).
Denied relief in the district court and in the Court of Appeal by a split panel, 469 So.2d 1207, plaintiff successfully sought writs in this Court.[1]
For the reasons which follow we reverse the judgments of the lower courts and remand to the Court of Appeal for further proceedings.
*603 Plaintiff was injured on June 3, 1982 when he was struck by a board which fell from an overhead scaffold. Disabled thereafter, at least until November 22, 1982, he received from McDermott weekly compensation benefits of $399.00. He was treated first by a Dr. Whitley to whom he was referred by the company, then by Dr. Jeffrey C. Fitter, an orthopaedic doctor to whom he was sent by Dr. Whitley. He was also examined by a second orthopaedic specialist, Dr. George Carey, on referral from Dr. Fitter.
Knowing of Moore's scheduled doctor's appointment on November 18, defendant's Division Personnel Administrator, Andy Maggio, called on the 18th and learned from Dr. Fitter's office that plaintiff had been released to commence work on November 22.[2] Maggio called McDermott's yard on November 22 and determined that plaintiff had not reported to work that morning. The supervisor leaderman thereupon initiated a "clearance form" which stated that termination was based on "Failure to Report to Work," and plaintiff was fired that day. The termination paper was actually signed by one Frank Naquin on November 23.
Whether plaintiff had been told to return to work on November 22 was in dispute at trial, although many of the facts concerning what preceded plaintiff's being fired on that date were not.
Plaintiff saw Dr. Fitter for a regular visit on November 18. His wife, Brenda Moore, was in attendance throughout the examination and visit on that occasion. At the conclusion of the visit plaintiff was not given a slip or other written notice that he had been released to return to work on November 22nd, or any other date; he was given a card advising that a return medical appointment was scheduled for December 20, 1982. And Moore did appear at the doctor's office December 20, 1982 for the scheduled medical appointment.[3]
The only witnesses to testify at the trial concerning the advice about return to work, were plaintiff; his wife Brenda; the Division Personnel Administrator, Andy Maggio; and Dr. Fitter. Dr. Fitter's secretary Ms. Dottie Coates did not testify.
Plaintiff and his wife both testified positively that no one told him on November 18 or any other date to return to work, or that he was able to return to work, on November 22nd. Furthermore, their subsequent actions were consistent with their version of the events. Plaintiff's wife was surprised, Maggio admitted, when she called Maggio on or about November 30 about non-receipt of the compensation check and learned that her husband had been discharged on November 22nd for not returning to work on that date. Mrs. Moore protested that neither she nor her husband had been told he should return to work. She made the identical protest to Dr. Fitter's secretary, according to Dr. Fitter. And plaintiff's lawyer wrote a letter on December 6, 1982 asking of the company permission for his client to return to work. *604 Maggio testified that, after conferring with his supervisor, he responded by a letter dated December 10 that Moore had been terminated and was not eligible for rehire.
Dr. Fitter, with less certainty, admitted that he had no independent recollection of the entire conversation with Moore, but "was left with the definite impression that I told him to go back to work." He testified that he "felt [Moore] could return to work on November 22 [and] told him so." Yet Dr. Fitter wrote a letter dated November 18, the day of the alleged conversation, not entirely consistent with his testimony. That letter was not received by McDermott until November 27th. In that letter he stated
I tend to agree with Dr. Carey that Mr. Moore presents no physical signs which would justify continue [sic] him on Workmen's Compensation and I believe he can return to work on November 22, 1982. Subjectively he still feels unable to work and I advised him that this is his decision to make at the present time. Due to subjective complaints I prescribed Flexeril 1 tablet three times a day and gave him a return appointment for 1 month. [emphasis added].
Also, contrary to his testimony at trial, Dr. Fitter signed a report for the Department of Labor, Office of Employment Security, dated December 20, 1982, in which he stated that Moore was unable to work and had not been released to return to work. Dr. Fitter explained at trial that these statements were made solely to facilitate Moore's acquiring unemployment insurance benefits, and were not true representations concerning his physical condition. He acknowledged in his testimony at trial that he was mistaken in his assumption that this report of his would aid Moore in securing unemployment compensation benefits, for it was only later that he learned that Moore would have been entitled to unemployment compensation benefits only if he was able to return to work and yet had not found employment. However innocent this mistake may have been, it strains credulity, as well as our sense of justice, to disregard that "mistaken" Department of Labor report, an error against the employee's interest (relative to unemployment benefits receipt), yet favorable to the employee in this case.
The record preponderates to the effect that plaintiff was not told by anyonehis employer, the doctor's office, the doctor or his secretarythat he was medically or physically able to return to work on the 22nd of November, and/or that he should do so. Furthermore, the employer does not even allege that any company employee instructed plaintiff to return to work. They rely instead on information purportedly received by telephone from someone in Dr. Fitter's office essentially to the effect that plaintiff was released to return to work, and the assumption that plaintiff had thus been informed of this release.
Notwithstanding our exhaustive discussion hereinabove, the principal factual issue is not whether Moore was told by the doctor or the doctor's secretary that he should return to work on November 22, 1982; the question is whether the company fired him because he asserted a worker's compensation claim, rather than for some other reason, whether the company violated La.Rev. Stat.Ann. § 23:1361(B) (which is quoted hereinafter).
While maintaining that the plaintiff was dismissed for a reason, i.e., not returning to work on November 22, 1982 as directed, defendant suggests that La.Civ.Code art. 2747, the "employment at will" provision of the Civil Code, permits termination with or without reason.[4] Since the enactment of *605 La.Civ.Code art. 2747 in 1808, however, legislatures and courts around the United States have in varying ways acted to limit the "employment at will" doctrine.[5]Wiley v. Missouri Pacific Railroad Co., 430 So.2d 1016, 1019 (La.App.3rd Cir.1982).
One such limitation is found in La.Rev. Stat.Ann. § 23:1361 which at Subsection B prohibits an employee's discharge for asserting a claim for Worker's Compensation benefits. This is the statute upon which plaintiff bases his lawsuit:
La.Rev.Stat.Ann. Title 23 § 1361. Unlawful Discrimination Prohibited
A. No person, firm or corporation shall refuse to employ any applicant for employment because of such applicant having asserted a claim for worker's compensation benefits ...
B. No person shall discharge an employee from employment because of said employee having asserted a claim for benefits under the provisions of this Chapter or under the law of any state or of the United States. Nothing in this Chapter shall prohibit an employer from discharging an employee who because of injury can no longer perform the duties of his employment.
C. Any person who has been denied employment or discharged from employment in violation of the provisions of this Section shall be entitled to recover from the employer or prospective employer who has violated the provisions of this Section a civil penalty which shall be the equivalent of the amount the employee would have earned but for the discrimination based upon the starting salary of the position sought or the earnings of the employee at the time of the discharge, as the case may be, but not more than one year's earnings, together with a reasonable attorney's fee.
Plaintiff contends that the employer should bear the burden of proving that he was not fired for asserting a worker's compensation claim. Admittedly it will normally be difficult for a plaintiff worker to prove an employer's reason, or motivation for firing him. Rarely will it occur, as in Wiley v. Missouri Pacific Railroad Co., 430 So.2d 1016 (La.App.3d Cir.1982), that the employer will give that very reason in writing. Nonetheless, La.Rev.Stat.Ann. § 23:1361(B) creates a civil cause of action as to which the normal civil burden of proof applies. "[O]ne who asserts a fact must carry the burden of proof of that fact and the fact must be established by a reasonable preponderance of the evidence." Meyer v. State, Department of Public Safety, 312 So.2d 289, 292 (La.1975). Normally, proof by a preponderance of the evidence requires that, taking the evidence as a whole, it shows the fact or cause sought to be proved to be more probable than not. Marcotte v. Travelers Insurance Company, 258 La. 989, 249 So.2d 105 (1971).
Under this more probable than not, or preponderance standard, plaintiff made a showing which, if uncontroverted, was sufficient. (1) He asserted a worker's compensation claim (for he was injured on the job, was drawing weekly compensation and receiving medical treatment). (2) He was fired from his job on the very day he purportedly had been told he was medically and physically capable of returning to work. (3) And, most significantly, the company's division personnel administrator testified that comp claimants were consistently treated differently from other employees who had simply missed a day of work. While the general policy was to terminate instantly the comp claimant who failed to *606 appear at work on the first day authorized or directed by a treating physician there was no such demanding policy for other company workers. The latter were shown more deference. They were given individual treatment, allowed to explain or give excuse for an absence upon their contacting supervisory personnel.[6] The consistent discriminatory policy of immediate termination for all comp claimants is perhaps even more damning in proving a violation of La.Rev.Stat.Ann. § 23:1361(B) than would be a sporadic discharge.
The dispute over whether plaintiff had been told by the doctor to return to work on November 22 has relevance in this case only because in protesting that plaintiff had not been fired for asserting a comp claim, the employer urged that he had been fired for the plausible reason that the man had not reported to work as required. For defendant to prevail the evidence would have to support several facts: that plaintiff had been told by someone in authority that it was imperative that he return to work on November 22; that some supervisor with the company was reasonably sure that plaintiff had been so instructed; that there was no excusable reason for plaintiff's failure to report to work; and that the reason for the discharge was the employee's failure in this regard. The more credible evidence in this record simply does not support any of these factual assertions.[7]
In summary we conclude that plaintiff did establish with a preponderance of the evidence that he was discharged from his job with defendant for the reason that he asserted a claim for Louisiana worker's compensation benefits.
He is thus "entitled to recover from the employer ... a civil penalty which shall be the equivalent of the amount the employee would have earned but for the discrimination based upon ... the earnings of the employee at the time of discharge ... but not more than one year's earnings, together with a reasonable attorney's fee. La. Rev.Stat.Ann. § 23:1361(C).
Because both lower courts denied plaintiff relief they did not find it necessary to determine the amount of the civil penalty to which plaintiff is entitled. Accordingly, the case will be remanded to the Court of Appeal for that determination. The alternative defense argument concerning set off for other earnings and unemployment compensation received by plaintiff after his discharge, and the defense request for remand to the trial court for factual findings with respect to other earnings and unemployment compensation may be urged in the Court of Appeal.

Decree
For the foregoing reasons the judgments of the district court and the Court of Appeal in favor of defendant are reversed; judgment is herein rendered in favor of plaintiff and against defendant, establishing that plaintiff is entitled to recover from defendant a civil penalty in accordance with La.Rev.Stat.Ann. § 23:1361(C); and the case is remanded to the Court of Appeal for further proceedings consistent with this opinion.
*607 REVERSED; JUDGMENT FOR PLAINTIFF; REMANDED TO THE COURT OF APPEAL.
NOTES
[1] Moore v. McDermott, Inc., 475 So.2d 346 (La. 1985).
[2] This information was provided by Dottie Coates, an employee of Dr. Fitter, not by Dr. Fitter himself. Furthermore, Maggio testified that Ms. Coates simply told him that Moore had been released to return to work on November 22 and that he "just assume[d] what the nurse told me was told to Mr. Moore." He did not remember if Ms. Coates said that Dr. Fitter had informed Moore that he should return to work, and he admitted in trial testimony that he was aware that Moore likely had not received a return to work slip. He stated that he had asked Ms. Coates if she had given Moore a return to work slip (perhaps indicating his belief that such action would have been the proper procedure), and that "she said that she couldn't tell because he did not stick around to get one." Mr. Moore did return to the waiting room after his examination, however, to receive an appointment card.
[3] Moore's appointments in the fall of 1982 had been on a monthly basis. Before his appointment of November 18 he had last been seen on October 21. His succeeding appointment was December 20 although there is some minor confusion in this regard in the testimony. Both Mr. and Mrs. Moore testified that the appointment card called for further examination in two months. Dr. Fitter testified that it was after the December appointment that Moore was advised to return in two months if he thought it necessary. In all events Moore returned for a regular medical visit on December 20.
[4] La.Civ.Code art. 2747 provides:

A man is at liberty to dismiss a hired servant attached to his person or family, without assigning any reason for so doing. The servant is also free to depart without assigning any cause.
This article apparently had its origin in the Civil Code of 1808. In Wiley v. Missouri Pacific Railroad Co., 430 So.2d 1016, 1018 (La.App.3rd Cir.1982) (citing Selznick, Law, Society and Industrial Justice 131 (1969)), the basis for this emphasis on the freedom of the parties to define their own relationship developed in contract doctrine with the industrial revolution. The generally superior bargaining power of the employer in establishing the relationship led to the rise of labor unions and the institutionalization of collective bargaining. Id. Although union contracts required that an employee could be dismissed for "just cause" only, most of the work force did not have the protection of union contracts.
[5] The employer's power of dismissal has been limited to protect participants in union activity, employees serving on jury duty, veterans, debtors, and informants. Also prohibited are employment practices that discriminate because of race, color, religion, sex, national origin, or age. Id.
[6] This was essentially the testimony of the Division Personnel Administrator. Admittedly he qualified his testimony by saying that he could only speak with authority regarding workman's compensation matters. Since he was a company official, qualified to address employment policy at least in some areas, and the company chose not to present other personnel to explain away his testimony, we accept his knowledge of company practices as accurate.
[7] At trial Mr. Maggio testified that, according to the best of his recollection, McDermott Shipyards, Morgan City Division, experienced reductions in hours in the summer of 1982 as well as February of 1982 and reduction in the work force itself in September of 1982 as well as March of 1983. This testimony may have been elicited not as a reason for the discharge but to show "the amount the employee would have earned but for" the discharge (La.Rev.Stat. § 23:1361(C)), a matter which they urge becomes relevant in assessing the civil penalty amount, in the event the company were not to prevail on the liability issue. If it was intended as a reason for the discharge it ill behooves the company to resort at trial to this reason for termination, when on firing day the written reason was for not returning to work.