517 So.2d 1102 (1987)
Rose LOCKSEY, Plaintiff-Appellant,
v.
CAPITOL MANUFACTURING COMPANY, et al., Defendants-Appellees.
No. 86-950.
Court of Appeal of Louisiana, Third Circuit.
October 7, 1987.
Writ Denied December 11, 1987.
Keller & Dangerfield, Lloyd Dangerfield, Lafayette, for plaintiff-appellant.
Edwards, Stefanski & Barousse, Russell K. Zaunbrecher, Crowley, for defendants-appellees.
Before STOKER and YELVERTON, JJ., and CULPEPPER, J. Pro Tem.[*]
WILLIAM A. CULPEPPER, Judge, Pro Tem.
The issue presented by this appeal is whether the trial court committed manifest error in granting defendants' motion to dismiss plaintiff's action against her employer for retaliatory discharge under La.R.S. 23:1361, the trial court finding that plaintiff failed to prove her case by a preponderance of the evidence.

FACTS
On January 4, 1984, Rose Locksey (hereinafter plaintiff) was working at her regular job as a packing clerk for Capitol Manufacturing Co. (hereinafter Capitol). As a packing clerk, plaintiff's job duties consisted of placing finished industrial parts in boxes and running them through a labeling or taping machine. While descending a set of stairs and carrying empty boxes, plaintiff slipped on the stairs and sustained a lower back injury. Plaintiff required hospitalization *1103 for five days following the accident.
Plaintiff was treated immediately following her accident by Dr. Mark Dawson, who prescribed a muscle relaxant and physical therapy for her. Plaintiff continued to see Dr. Dawson until April 1984 when she was released from the doctor's care. Plaintiff also saw Dr. James McDaniel, an orthopedic specialist. The extent of treatment and the specific diagnostic findings of both physicians are not available to this court, as neither doctor was called as a witness at trial, nor is either doctor's testimony included in the record in the form of depositions. However, plaintiff testified at trial that, the last time she saw Dr. McDaniel in March or April 1984, he felt that she was probably ready to go back to light duty work. Earlier, on February 20, 1984, plaintiff had attempted to return to work but quit after three and one-half hours because of pain.
On or about April 12 or 13, 1984, plaintiff was again examined by Dr. Dawson, at which time Dr. Dawson made a statement to the effect that plaintiff should "try to go back to work if you are interested in keeping your job." Dr. Dawson dismissed plaintiff as capable of returning to work at this time. Later on the same date two Capitol employees, the plant manager, Don George, and safety director, Clayton Dailey, called plaintiff and inquired as to whether or not she would be coming in to work the following week. Plaintiff's response to these inquiries is in dispute. Mr. Dailey stated that plaintiff said that she didn't "feel she was ready to come back to work." Mr. George stated that plaintiff told him that she didn't "feel like coming back to work yet." Both Mr. Dailey and Mr. George denied that plaintiff indicated that she would be seeking further medical help; however, plaintiff testified that she told either Mr. Dailey or Mr. George that "until I get more help for my back, I don't think I could go back and do the same work that I was doing." Mr. George then advised plaintiff that since Dr. Dawson had released her to return work April 16, 1984, she would be expected to return to work according to company policy, in response to which plaintiff advised Mr. George to "do what you have to do." Plaintiff also testified at trial that Mr. George advised her that if she didn't return to work by Wednesday, April 18, 1984, her "files would be terminated."
On April 17, 1984, plaintiff saw Dr. John Guidry, at which time the doctor made the following findings: that plaintiff was injured in a work-related accident January 4, 1984; that plaintiff was previously examined by other physicians as outlined above; that plaintiff complained of lower back pain which was persistent and did not disappear with plaintiff's previous treatment; that plaintiff showed tenderness in the lumbosacral area and an area of point tenderness in the lumbosacral area; and that plaintiff was diagnosed as having a back strain. Dr. Guidry then prescribed cortisone and medicine for pain and inflammation. Dr. Guidry continued to examine and treat plaintiff until October 11, 1984, at which time plaintiff reported only slight pain and was released from his care.
On Wednesday, April 18, 1984, plaintiff's employment with Capitol was terminated. According to a letter from Capitol dated April 18, 1984 and addressed to plaintiff, plaintiff was terminated due to a violation listed in Capitol's employee handbook of failing to report for work for three consecutive days with no report. Plaintiff had been receiving worker's compensation benefits since her injury on January 4, 1984, however, these benefits were terminated with plaintiff's employment. Testimony at trial indicates that Capitol was not aware on April 18, 1984, the date of termination, that plaintiff was under a doctor's care beginning on the previous day, since evidence shows that plaintiff's last correspondence with Capitol was by telephone conversation on or about April 13, 1984.
Plaintiff filed suit on March 14, 1985 against Capitol and against its employee, Don George, contending that Capitol wrongfully discharged her in retaliation for filing her worker's compensation claim, in violation of La.R.S. 23:1361, with plaintiff seeking back wages of one year and reasonable *1104 attorney's fees as permitted by statute.
At trial and following plaintiff's case in chief on April 10, 1986, defendant moved to dismiss defendant Don George on the basis that any actions attributable to him were as a result of his acting as a representative of Capitol Manufacturing Company. Defendant also moved at this time to dismiss plaintiff's action against Capitol Manufacturing Company, contending the plaintiff failed to produce evidence tending to establish that Capitol wrongfully discharged plaintiff. Following arguments by both plaintiff and defense counsel, the trial court granted both motions and, on May 5, 1986, rendered judgment based on defendants' motion dismissing plaintiff's case with prejudice. Plaintiff now appeals the trial court judgment assigning the following errors:
(1) The finding of the trial court that Capitol terminated plaintiff for being absent three consecutive days without notice when plaintiff informed Capitol of her intent to be absent due to her inability to perform;
(2) The trial court's failure to find that the employee handbook violations provided Capitol with an excuse for terminating plaintiff when in fact plaintiff was terminated in retaliation for filing her worker's compensation claim;
(3) The trial court erred in failing to find that plaintiff met the burden of proof in her case and in dismissing plaintiff's action at the conclusion of her case in chief; and
(4) The trial court's error in failing to award benefits as provided for by statute.
Since each of these assignments of error deals with the primary issue of whether the trial court was correct in finding that the plaintiff failed to meet her burden of proving that she was discharged in retaliation for filing her worker's compensation claim, we combine these assignments of error for the purpose of discussion.
At the conclusion of plaintiff's presentation of evidence, Capitol moved to dismiss plaintiff's claim against Capitol alleging a complete absence of facts indicating that Capitol had discharged plaintiff in retaliation for filing her worker's compensation claim. The burden of a claimant alleging retaliatory discharge under La.R.S. 23:1361 is to prove by a preponderance that he was discharged from his job for the reason that he asserted a claim for Louisiana Worker's Compensation benefits.[1]Moore v. McDermott, Inc., 481 So.2d 602 (La.1986). In order to prove a claim under La.R.S. 23:1361, a plaintiff must prove not merely that he was discharged because of his injury, but that he was discharged because he asserted a claim for worker's compensation benefits. Vollenweider v. New Orleans Public Service, 466 So.2d 804 (La.App. 4 Cir.1985), writ den., 468 So.2d 577 (La. 1985).
Plaintiff cites several cases in which employers were found to have retaliated against former employees for filing worker's compensation claims. In Ducote v. J.A. Jones Const. Co., 471 So.2d 704 (La. 1985), our Supreme Court agreed with the trial court's conclusion that a carpenter's violation of a safety rule was used merely as an excuse to fire him, when in fact the carpenter was fired in retaliation for filing a worker's compensation claim. In Ducote, however, facts revealed that a company *1105 employee stated to the carpenter that if he filed a claim for medical expenses with the company's insurance company, he would be terminated. This fact, along with the fact that the carpenter was later fired allegedly for violating a safety rule, persuaded the court to find retaliatory discharge on the part of the defendant company.
In Wiley v. Missouri Pacific R. Co., 430 So.2d 1016 (La.App. 3 Cir.1982), writ den., 431 So.2d 1055 (La.1983), this court upheld a trial court finding that a plaintiff was a victim of retaliatory discharge on the part of a defendant company, where the plaintiff settled a personal injury claim against the employee/railroad company, and then the company "erroneously" permitted plaintiff to return to work. Plaintiff's employer was held liable for subsequently discharging plaintiff on the basis that it had rehired the plaintiff by mistake, this court finding that plaintiff had sufficiently proved that he was discharged because he had previously filed a claim for compensation.
In the instant case the trial court relied upon the recent case of Moore v. McDermott, supra. Plaintiff, however, contends that the trial court misapplied the analysis of the Moore decision.
In Moore, defendant's personnel administrator called plaintiff's doctor on the date of and following plaintiff's appointment, learning that plaintiff had been released to commence work on November 22, 1982. The administrator called the shipyard on November 22, 1982 and was advised that plaintiff had not reported to work. Plaintiff's supervisor then initiated a clearance form which stated that plaintiff was terminated for failure to report for work. It was disputed whether or not plaintiff had been told to return to work on November 22. Plaintiff was not given written notice that he was to report to work on November 22, 1982. Other factors were consistent with lack of notice. As stated by our Supreme Court:
"The record preponderates to the effect that plaintiff was not told by anyone his employer, the doctor's office, the doctor or his secretary, that he was medically or physically able to return to work on the 22nd of November, and/or that he should do so."
Moore, supra at page 604.
The Supreme Court went on to say that the principal factual issue was not whether plaintiff received notice from the doctor to return to work, but rather whether defendant company fired him because he asserted a worker's compensation claim rather than for some other reason. The court went on to find that, more probably than not, the plaintiff established: (1) that he asserted a worker's compensation claim; (2) that he was fired from his job on the very day he purportedly had been told he was medically and physically capable of returning to work; and (3) most significantly, the company's division personnel administrator testified that compensation claimants were consistently treated differently from other employees missing only one day of work.
In the instant case, no evidence tended to show that Capitol treated persons filing worker's compensation claims differently than other persons missing periods of work. Only one former employee of Capitol was shown to have both filed a worker's compensation claim and been fired for excessive absences, which does not amount to consistent treatment of compensation claimants on the part of Capitol. Second, plaintiff in this case was not fired on the very day she was discharged from her physician's care. Rather, plaintiff was called by Capitol on the day she was discharged by her doctor and told to report to work, and plaintiff was not terminated until missing work for three days after her physician had released her as available for work.
Plaintiff contends that she could not validly have been discharged for missing three days of work without notice, since she previously told Capitol employees she was unable to return to work. However, the provision in Capitol's employee handbook upon which plaintiff's termination was based provided that an employee could be terminated when an employee missed work for three days without notification or without justification. Plaintiff was told on or about April 13, 1984, that due to her discharge from the doctor's care, she would be required to return to work or be subject to *1106 termination and plaintiff did not advise Capitol that she would be seeking further medical assistance. When plaintiff's employment was terminated on April 18, 1984, Capitol was apparently unaware that plaintiff had been seeking further medical assistance. Under these circumstances, we are convinced that the trial court was not clearly wrong in finding that the plaintiff failed to carry her burden of proving that she was fired in retaliation for filing her worker's compensation claim and in finding that plaintiff's employment was terminated for a valid reason. Absent manifest error, findings of the trial court will not be disturbed on appeal. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
A recent opinion from the Fourth Circuit sets forth that, in a case for retaliatory discharge under La.R.S. 23:1361, the test for sufficiency in a circumstantial evidence case is that the evidence as a whole must exclude other reasonable hypotheses with a fair amount of certainty. Vollenweider v. New Orleans Public Service, supra. In Vollenweider, the plaintiff injured his foot in an on-the-job accident; however, plaintiff was assigned to office work until reinjuring his foot less than one month later. Plaintiff was later fired from his job allegedly for failure to comply with company policy regarding calling into work when an employee was unable to attend work. In Vollenweider the court found, as we find in the instant case, that the plaintiff's employment was terminated due to a violation of company policy regarding attendance at work, and that the plaintiff failed to meet his burden of proving wrongful discharge under La.R.S. 23:1361 to the exclusion of other reasonable hypotheses with a fair amount of certainty. Accordingly, plaintiff is not entitled to the relief as set forth under La.R.S. 23:1361.
For the above reasons the judgment of the trial court is affirmed. All costs of this appeal are assessed to the plaintiff-appellant.
AFFIRMED.
NOTES
[*] Judge William A. Culpepper, Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.
[1] LSA-R.S. 23:1361 provides, in pertinent part:

"B. No person shall discharge an employee from employment because of said employee having asserted a claim for benefits under the provisions of this Chapter or under the law of any state or of the United States. Nothing in this Chapter shall prohibit an employer from discharging an employee who because of injury can no longer perform the duties of his employment.
C. Any person who has been denied employment or discharged from employment in violation of the provisions of this Section shall be entitled to recover from the employer or prospective employer who has violated the provisions of this Section a civil penalty which shall be the equivalent of the amount the employee would have earned but for the discrimination based upon the starting salary of the position sought or the earnings of the employee at the time of the discharge, as the case may be, but not more than one year's earnings, together with a reasonable attorney's fee."