MARVIN, Judge.
In this appeal by a w.c. claimant whose employment was terminated while she was being paid w.c. benefits and before the claimant was released by her doctor to return to work, the sole issue is whether a summary judgment is proper to defeat the partial demand of the claimant that her termination was in retaliation to her demand for w.c. benefits, contrary to LRS 23:1361 B.
On this record, we find summary judgment was warranted and affirm.
FACTS
Plaintiff worked for several years as a dietary aide at defendant’s medical center in West Monroe. On October 16, 1986, she tripped on a hose in a hallway and severely fractured a bone in her left knee. Surgical repair was necessary. On May 20, 1987, her doctor released her to return to work “in the near future” with a 15-20 percent disability of the knee. He described her recovery from the fracture as “optimal” and told her to return in October 1987 for surgery to remove the metal used to reduce the fracture.
Because her use of the left leg was restricted after surgery, plaintiff developed “osteoporosis of disuse” in her left ankle, causing soreness and swelling. After plaintiff twisted her ankle at home in March 1987, the pain increased and continued through her May 20 doctor’s visit. Her doctor expected the ankle pain to subside as she became more active.
Plaintiff was paid worker’s compensation benefits from October 1986 until about May 20, 1987, the date her doctor released her. On April 20, 1987, Glenwood’s assistant personnel director, Linda Lofton, wrote plaintiff that her position had been filled “due to staffing needs” and her employment would be terminated May 1, 1987, because she had been absent for six months.
Plaintiff sued for temporary total disability benefits, medical expenses, and penalties and attorney fees, alleging arbitrary termination of her benefits. She also sued for penalties and attorney fees for the alleged “retaliatory” discharge under LRS 23:1361, contending defendant fired her because she was receiving worker’s compensation benefits.
Responding to the retaliatory discharge claim, defendant’s motion for summary *1038 judgment was supported by Linda Lofton’s affidavit and depositions of plaintiff and her doctor. The affidavit states plaintiff was terminated under hospital policy which requires termination if an employee is absent for more than six months, and not because plaintiff had made a worker’s compensation claim.
Attached to Ms. Lofton’s affidavit is a copy of defendant’s written policy in question that was adopted April 6, 1987. The section on absence states that employees may use accrued sick leave or vacation time during and after the first week of absence, and continues:
Employees who are on worker’s compensation do not accrue benefits. Every effort will be made to place the employee in the same position upon his/her return to work, however, there are situations where the position must be filled. Therefore, we cannot guarantee employees a position upon their return from an absence.
If the employee cannot return to work within six (6) months, his/her employment will be terminated. The employee will be eligible to apply for long term disability benefits at that time.
According to the affidavit, this policy is applied to employees on all medical leaves of absence for more than six months, including absences that are unrelated to worker’s compensation.
The deposition of plaintiff’s doctor reveals that she was not released to return to work until May 20, 1987, one month after the termination letter was mailed. In her deposition in August 1987, plaintiff denied her doctor told her she could return to work on May 20 and “doubted” her ability to return because her ankle was still tender in August and she feared twisting it again.
Plaintiff also said Linda Lofton telephoned about a week before she sent the termination letter and told plaintiff of the May 1 termination. This testimony followed:
Q. Did she say anything about your workman’s comp ending at that time?
A. No. No, not the workman’s comp....
Q. But she told you that your job was going to terminate?
A. Yes.
Q. Were you aware of why that was?
A. I had no idea because she knew that my doctor had not released me at this particular time.
Q. Was your job, in fact, terminated?
A. What they told me was that they could not hold my job for me and that my job had been replaced by someone.
Q. Did they tell you why?
A. Well, I don’t know if they just spelled it out. The way I just took it was because I had got hurt on the job.
Q. Did anybody say that to you?
A. Well, the way it was put to me, that is exactly the way I took it.
Q. Who was it that said that?
A. Linda Lofton_
Q. And it was your understanding that the reason you were terminated is because you were unable to return to work because of your injury?
A. Absolutely. Absolutely_
Q. [When] Glenwood told you your job was terminated, they didn’t say that it was because you were drawing workman’s compensation, did they?
A. Well, no....
Q. And, in fact, you continued to draw workman’s compensation after you were terminated, did you not?
A. Yes, yes_
Q. [A]t the time you got this letter you were still disabled and under the doctor’s care.
A. Right, right.
Plaintiff filed a memorandum in opposition to summary judgment, but did not file affidavits or depositions to counter the “facts” in her deposition and the other filings in support of summary judgment. Plaintiff argued, without a factual basis, that the company policy about discharging *1039 any employee absent for more than six months was altered in her oral communications with Linda Lofton and was used to disguise the real reason for her discharge, that is, the fact that she was receiving worker’s compensation benefits. Plaintiff also contended the policy should not apply to her because it was not adopted until after her work injury.
TRIAL COURT RULING
The trial court gave these reasons for granting summary judgment:
The claim for unlawful discharge is based upon R.S. 23:1361 B, which provides:
“No person shall discharge an employee from employment because of said employee having asserted a claim for benefits under the provisions of this Chapter.... Nothing in this Chapter shall prohibit an employer from discharging an employee who because of injury can no longer perform the duties of his employment.”
The only evidence in this record clearly indicates that after six months’ absence by plaintiff, who still could not return to her regular job because of her injury, Glenwood’s “staffing needs” brought about its decision to terminate her employment and fill her position in order to carry on its services....
Engaging in speculation, a court might imagine any state of facts or draw a variety of inferences from the disclosed facts. Whatever Glenwood’s prior policy may have been, and no matter when the published policy was adopted, the undisputed facts before this Court reveal that on May 1, 1987, in the plain words of the statute, plaintiff “because of injury” was not able to “perform the duties of her employment.”
SUMMARY JUDGMENT.
Summary judgment may be granted on all or part of the relief sought in the action. CCP Art. 966 A. The summary judgment here is limited to the retaliatory discharge claim and does not address plaintiff’s claims for benefits.
Summary judgment shall be granted if the pleadings, discovery responses, and affidavits show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law. Art. 966 B.
If the mover’s supporting documents are sufficient to resolve all material issues of fact, the adverse party may not rely on the mere allegations or denials of his pleadings to show that material facts are in dispute. He or she must set forth specific facts, by affidavits or other permissible filings, to show that a genuine and material factual issue remains for trial. If this response is not made, summary judgment shall be granted. CCP Art. 967; Nathans v. Vuci, 443 So.2d 690 (La.App. 1st Cir.1983); Fortenberry v. Berthier, 503 So.2d 596 (La. App. 4th Cir.1987).
The mere possibility that a factual issue could be raised does not defeat summary judgment if the opponent does not actually raise one. Welsh Southern Oil Co. v. Scurlock Oil Co., 201 So.2d 376 (La.App. 3d Cir.1967).
Plaintiff’s own testimony in her deposition corroborates defendant’s explanation of the reason for her termination. Plaintiff admitted that her injuries prevented her from returning to work before May 1,1987. She understood from her phone conversation with Linda Lofton that her inability to return to work was the reason for her termination. She said her receipt of weekly benefits was not mentioned in that conversation and admitted receiving benefits for several weeks after May 1 [apparently until her doctor released her to return to work on May 20].
By the clear wording of LRS 23:1361 B, discharge of a worker’s compensation claimant is not retaliatory or unlawful if it is based on the claimant’s inability to perform the employment duties because of injury. The statute does not specify how long the employer must wait before terminating an employee because of that employee’s inability to return to work. The length of the employee’s absence is one of many factors to consider in deter *1040 mining the true reason for termination. See Vollenweider v. New Orleans Public Service, 466 So.2d 804 (La.App. 4th Cir.1985), writ denied, 468 So.2d 577 (La.1985). There, the employee’s discharge one month after his work injury was not deemed retaliatory because his injury prevented him from returning to work.
Regardless of when the written policy on absences was adopted, defendant did not discharge plaintiff until she had missed six months of work. Defendant knew plaintiff had been receiving weekly benefits and was still under the care of her doctor. Defendant’s insurer did not stop paying temporary total benefits when plaintiff was terminated, but did so only after it learned that her doctor had released her with some permanent partial disability rating.
Plaintiff’s subjective belief that the “reason” for her discharge effective May 1, 1987, was her receipt of w.c. benefits rather than her inability to return to work is simply not borne out by any facts in this record. Compare Locksey v. Capitol Mfg. Co., 517 So.2d 1102 (La.App. 3d Cir.1987), writ denied, 519 So.2d 106 (La.1987), and cases cited therein.
DECREE
The undisputed facts show plaintiff was discharged for a lawful reason. Defendant was entitled to a partial summary judgment rejecting plaintiff's retaliatory discharge demand as a matter of law under LRS 23:1361 B.
The summary judgment, at plaintiff’s cost, is
AFFIRMED.