488 So.2d 1108 (1986)
Cedric GUYE, Plaintiff-Appellee,
v.
INTERNATIONAL PAPER COMPANY, INC., Defendant-Appellant.
No. 17754-CA.
Court of Appeal of Louisiana, Second Circuit.
May 7, 1986.
*1109 Kelly & Salim by Robert L. Salim, Natchitoches, for plaintiff-appellee.
Bodenheimer, Jones, Klotz & Simmons by J.W. Jones, Shreveport, for defendant-appellant.
Before HALL, JASPER E. JONES, SEXTON, JJ.
JASPER E. JONES, Judge.
This is an appeal of a worker's compensation suit. The plaintiff-appellee is Cedric Guye. The defendant-appellant is the International Paper Company, Inc. The plaintiff was awarded worker's compensation based upon 5% permanent disability of the hand, penalty wages and attorney fees. We affirm.

FACTS
On June 17, 1982, the plaintiff sustained an injury to the tip of his left ring finger while working as a lumber stacker at the defendant's plant in Coushatta, Louisiana. The injury resulted in a portion of the fleshy part of the tip of the finger being severed. There was no injury to the bone in the end of the finger although it was left partially exposed and eventually part of it had to be removed.
The plaintiff was initially treated by Dr. J.D. Huckabay who performed minor surgery and removed the fingernail on June 24, 1982. The plaintiff was released for light duty by Dr. Huckabay on June 25, 1982.
On June 30, 1982, the plaintiff saw Dr. C.G. McAlister, an orthopedic surgeon, who determined the injured finger needed a skin graft to aid in repairing the fingernail and to cover the exposed bone. The operation was performed on July 8, 1982, and the plaintiff was hospitalized for four days. He was released for light duty on August 23, 1982.
The plaintiff's employment was terminated on September 24, 1982, as a result of accumulating four written reprimands within the preceding year and six unexcused absences within the preceding six months, all contrary to company rules.
The plaintiff filed suit seeking benefits for total and permanent disability and penalties *1110 and attorney fees pursuant to LSA-R.S. 23:1361[1] contending he was discharged for asserting a worker's compensation claim. The parties stipulated that there were no outstanding medical bills.
Dr. McAlister testified plaintiff had sustained a 25% partial permanent disability to the injured finger and a 5% disability to his entire left hand. The defendant presented no medical testimony. The plaintiff was released for light-duty by Dr. McAlister as of August 23, 1982, and he returned to work that date. The plaintiff's supervisor testified the employment discharge was due to a history of written reprimands and unexcused absences in violation of company rules and the plaintiff was not discharged for asserting a worker's compensation claim.
The trial court found the plaintiff had sustained a 5% partial permanent disability to his left hand and awarded the scheduled benefits of 5% times 662/3% of his wages for 150 weeks.[2] This resulted in the application of the weekly minimum of $55.00 per week for total scheduled compensation payable of $8,250.[3] The parties stipulated the *1111 defendant had previously paid $1,332.86 in benefits and this amount was credited to the $8,250.00 resulting in a total award of $6,917.14.
The court found plaintiff had been discharged in violation of LSA-R.S. 23:1361 and awarded a penalty of $9,416.16, the plaintiff's yearly net wages, and attorney fees of $4,500.00.
The defendant's assignments of error present the following issues for decision:
(1) Did the trial court err in holding that the plaintiff sustained a disability to his left hand rather than only to his injured finger?
(2) Did the trial court err in ruling the plaintiff was discharged in violation of LSA-R.S. 23:1361?
(3) Was the trial court clearly wrong in awarding $4,500 in attorney fees?
ISSUE NO. 1Did the trial court err in ruling that the plaintiff had sustained a disability to his entire left hand?
Law On Equating An Injury To A Finger With A Disability Of The Entire Hand In A Worker's Compensation Suit
In a worker's compensation suit, where a claimant suffers a permanent partial loss of use of a finger, if the evidence fails to relate the injury to the hand as a whole in any manner other than the finger forms a component part of the hand, then the court must limit the remedy to the loss of use of the finger. The claimant who seeks to establish such a disability to the hand must prove the pain sustained and the loss of gripping power incurred extends to the whole hand. Medical testimony as to the disability of the entire hand is not determinative of the compensation to be awarded. Stracener v. United States Fid. & Guar. Co., 410 So.2d 1220 (La.App.3d Cir.1982), aff., 420 So.2d 1101 (La.1982); Nash v. Knoblock, 381 So.2d 404 (La.1980). A trial court's factual findings in worker's compensation cases are entitled to great weight and reasonable evaluation of credibility and reasonable inferences of fact must not be disturbed, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Ducote v. J.A. Jones Const. Co., 471 So.2d 704 (La.1985).
The defendant argues the plaintiff failed to prove a disability to his entire left hand and that the trial court should have awarded benefits for twenty weeks as authorized by LSA-R.S. 23:1221(4)(c).[4]
The plaintiff testified the pain resulting from the accident extends to his entire left hand and the pain has greatly affected his ability to grip objects with that hand. He also testified the pain and tenderness in the injured finger was enhanced by any attempt to use the hand to pick up a piece of lumber and that pressure against the injured finger, while handling lumber, made the hand hurt. This testimony was corroborated by his mother who related that she had been in constant contact with the plaintiff during the time prior to his termination. Dr. McAlister, however, testified that the plaintiff's only complaints concerned soreness to his finger. Dr. McAlister did estimate that the accident had resulted in a 25% disability to the finger and 5% disability to the left hand and that he should do no work requiring heavy pressure to the injured finger.
The trial court written reasons for judgment ruled as stated:
"In reviewing the lay testimony in conjunction with the medical expressions of Dr. McAllister [sic], it appears that plaintiff suffered a schedule injury to the hand rather than total and permanent disability and rather than simply an injury to the finger. To limit the injury to the finger would, in effect, ignore the *1112 reality of this type of injury in light of the type of work performed."
While we might well have reached a different conclusion, we are compelled to affirm the judgment as the evidence of record on this issue provides substantial support for the trial court judgment and the trial court was not clearly wrong. Ducote v. J.A. Jones Const. Co., supra.
ISSUE NO. 2Did the defendant terminate the plaintiff's employment in violation of LSA-R.S. 23:1361?

Law On Retaliatory Discharge In Worker's Compensation Suits
An employer may not discharge an employee from employment because a claim for benefits was filed under the worker's compensation statute. LSA-R.S. 23:1361.[5] The purpose of the anti-discrimination statute is to prevent unjust dismissals and to allow employees to exercise their right to worker's compensation benefits without fear of retaliatory action by their employer. An employer may not stretch the facts of a situation out of context as an excuse for discharging an employee for filing a claim for benefits. Ducote v. J.A. Jones Const. Co., supra. Although LSA-R.S. 23:1361 has been referred to as being remedial in nature, the statute is equally penal as it seeks to provide a remedy against an employer for one year's wages if the employer has violated its provisions. Because it is penal in nature, the anti-discrimination statute should be strictly construed. Rambin v. Louisiana Downs, Inc., 482 So.2d 916 (La.App.2d Cir.1986).[6] The trial court is obligated to make a judgment call as to the motive of the employer in discharging the employee and this determination should not be disturbed upon appeal absent manifest error. Turner v. Winn Dixie Louisiana, Inc., 474 So.2d 966 (La.App.5th Cir.1985).
The defendant argues that the plaintiff was discharged for unexcused absences from work and not because of his injury or because of his worker's compensation claim.
The plaintiff argues that the defendant's attitude toward him changed a great deal after the accident and that he was terminated for absences that were directly related to both his injury and to the assertion of his claim.
The record shows that prior to the accident of June 17, 1982, the plaintiff was involved in a separate encounter with management concerning a work related injury. Jodie Hall, the defendant's employee relations supervisor, testified that the plaintiff and the plaintiff's father came to see him on March 2, 1982, and alleged that a 2' X 4' board of lumber had fallen on the plaintiff's head on February 24, 1982, while he was at work, and had caused the plaintiff to have headaches. Hall concluded by asserting that the plaintiff was examined by several physicians but all tests were negative. Carey Brody, the plaintiff's shift supervisor, testified that the alleged accident caused the plaintiff to miss sixteen days of work and that upon his return, the plaintiff confessed that the board had not struck him and that he had been experiencing such headaches all of his life. No disciplinary action was taken by Hall or Brody against the plaintiff as a result of this alleged confession.[7] Brody testified *1113 that prior to the June 17, 1982, accident plaintiff had been a good employee with the exception of the February 24, 1982, incident.
The plaintiff met with Dr. Huckabay and Jodie Hall on Friday, June 25, 1982. The plaintiff testified as follows in regard to their insistance that he return to work:
Q. And at that time were you not advised that you could return to light work?
A. The doctor, he asked me ... Jodie Hall was telling him that he needed me to come back to work, and I told him that I wanted to get my finger taken care of first and then I would return to work. And I told him that I wanted to get my finger taken care of and then I could come to work. So they kept pushing the issue and I said that I would try and go back to work.
The record shows that Dr. Huckabay operated on the plaintiff's finger on June 24, 1982, and issued a light-duty medical release the next day after the meeting with the plaintiff and Jodie Hall.
The plaintiff did not report back to work but was examined by Dr. McAlister five days later on Wednesday, June 30, 1982. It was on this date that the defendant issued the first of the four written reprimands which led to the plaintiff's termination.[8] The plaintiff was hospitalized on July 7, 1982. He was operated on by Dr. McAlister on July 8, 1982 and released from the hospital on July 10, 1982. Dr. McAlister saw the plaintiff on July 16 and 26, 1982, and on August 4 and 18, 1982. The plaintiff was issued a light-duty work release on August 23, 1982, containing the restriction of no heavy work with the left hand. Dr. McAlister wrote a report on the date of each examination and sent a copy of it to the defendant. Jodie Hall did not deny receiving the medical reports.
The record shows the plaintiff returned to his employment on the date of Dr. McAlister's light work release but subsequently missed four days work resulting in the following three written reprimands:
a. Defendant's exhibit D-3, written reprimand issued August 26, 1982, for violating rule 10 under Group I offenses in that someone called on August 25, 1982, stating that the plaintiff's finger was hurting, but made no attempt to see if other light duty work was available.
b. Defendant's exhibit D-4, written reprimand issued September 7, 1982, for violating rule 9 of the Group I offenses in that the plaintiff was absent from work on September 4, 1982, and did not properly notify his supervisor. A warning was issued that another violation could result in termination.
c. Defendant's exhibit D-5, written reprimand issued September 24, 1982, for accumulating six unexcused absences in the preceding six months and for getting four written reprimands within the preceding year. The plaintiff was terminated *1114 that day. This exhibit contained the following dates as unexcused absences: 6/25; 7/5; 7/7; 7/15; 8/24; 8/25; and 9/4.
The trial court, in its written reasons, found the totality of the circumstances established the defendant's liability under LSA-R.S. 23:1361. We conclude the trial court was not clearly wrong in this determination. The record supports the interpretation that the defendant's attitude toward the plaintiff changed abruptly after he asserted his compensation claim. We deem very significant the testimony of Carey Brody that no action was taken against the plaintiff as a result of his alleged dishonesty in falsely reporting a work related accident and fraudulently taking off sixteen work days. We note that this alleged incident occurred only three months before the finger injury and apparently no compensation claim was asserted by the plaintiff. We also deem significant that the first written reprimand, alleging that the plaintiff's negligent conduct caused the accident, was issued almost two weeks after the accident and on the very day that the plaintiff first visited Dr. McAlister.
The fourth reprimand which mandated termination under defendant's rules referred to absences on the following dates: 6/25; 7/5; 7/7; 7/15; 8/24; 8/25 and 9/4. All six dates are in a time frame when the plaintiff was disabled to do his regular job. Evidence of this fact was well known to defendant because the reprimand was written on September 22, 1982, long after defendant had received the pertinent medical information on plaintiff's injury. The listed dates were days when plaintiff was asserting his compensation claim and these absences should not have been categorized as unexcused. The first day listed was June 25, 1982, which was the day following plaintiff's finger surgery in the Coushatta Hospital. It was this day that defendant's personnel manager accompanied plaintiff to Dr. Huckabay's office and sought his release to return to work from Dr. Huckabay. The next unexcused absence listed was July 5, 1982, which was only five days from the date plaintiff was first examined by Dr. McAlister who found the plaintiff in pain with a draining finger. Dr. McAlister, in a written report to defendant dated June 30, 1982, advised of this fact and further advised the soaking treatment prescribed, that a skin graft may be needed and that another examination was scheduled for July 7, 1982. The next unexcused absence listed was July 7, 1982, and on that date plaintiff was hospitalized for the skin graft and a report dated July 7, 1982, was sent by Dr. McAlister to the defendant. The next unexcused absence listed was July 15, 1982, which was six weeks before plaintiff was released for light-duty work on August 23, 1982. The last three days listed on the termination reprimand are all during a time that plaintiff had not been released to perform heavy work with his left hand. He testified when he returned for light-duty the work assigned him by his employer required his use of both hands to straighten up piles of lumber on a chain. Plaintiff testified he missed these work days because bumping the finger on the lumber caused pain. Plaintiff testified he told his supervisor of the pain the job was causing him. This testimony was not rebutted. It therefore appears there was no justification for calling these days unexcused absences.
The record supports the determination that the defendant's attitude toward the plaintiff did change abruptly after the accident of June 17, 1982 and that the defendant's ostensible documentation of violations of company disciplinary rules was actually motivated in retaliation for the fact that the defendant continued to assert his worker's compensation claim. On August 10, 1982, the defendant received a demand letter from plaintiff's attorney demanding worker's compensation benefits. Within the six weeks following receipt of this demand letter, the defendant directed the last three orders of reprimand to the plaintiff, all of which were based upon unexcused absences. Each of these occurred following *1115 the plaintiff's finger injury and before he was released to return to full duty by the treating physician.
The justification for these absences has been analyzed in detail. All of the absences can, therefore, be said to have been caused by active treatment which the plaintiff was receiving for his finger or by pain caused by heavy work requirements which the plaintiff was required to do following his attempted return to work on a light-duty release from his doctor. The defendant's direct supervisor, Carey Brody, who had personally issued each of the reprimands, including the fourth reprimand which incorporated the termination, testified the plaintiff was terminated solely because of his unexcused absences. He further testified that an employee who was off duty under doctor's orders and who could only work in pain would not have received the reprimands nor the unexcused absences.[9]
The defendant was very well informed of the plaintiff's injury and treatment by Dr. Huckabay and, thereafter, by Dr. McAlister. The defendant had received written reports from Dr. McAlister which advised them of the specific findings and surgery performed upon the plaintiff and further advised them that as of August 23, 1982, he was only able to do light-duty work. With all of this information available the defendant should have known plaintiff could not perform the heavy work assigned him without having some pain and absences. According to defendant's supervisor, absences because of pain and supported by medical evidence, were not considered unexcused. We further note that the last absence, which formed a basis for the fourth reprimand and the plaintiff's termination, occurred on September 4, 1982. It was three weeks later, on September 24, 1982, before the final reprimand and termination slip was issued. During this twenty-one days the record reflects that for the weeks commencing September 5, 1982, to September 12, 1982, the plaintiff worked four days. For the weeks of September 12, 1982, to September 19, 1982, he worked three days and the following week he worked September 20, 21, 22 and 24, 1982. These three work-weeks immediately preceding plaintiff's termination tend to reflect that the plaintiff, who had a very tender finger, was functioning very close to normal. It is significant that plaintiff's work performance during this three week period was not considered in any way as a basis for his termination.
All of the circumstances which we have reviewed mandate the conclusion that this plaintiff was not terminated because of true unexcused absences within the contemplation of its employer's rules, even though this was the reason given for his termination. The employer did not give as a reason for his termination that the plaintiff received an injury and was unable to do the work. The defendant stretched the facts of a situation out of context to create rule violations just as the defendant did in Ducote v. J.A. Jones Const. Co., supra, wherein penalty wages were granted. The record supports the trial court's determination that the defendant's motive for terminating the plaintiff was because he asserted a compensation claim and for this reason plaintiff was properly awarded the one year salary under the penalty provisions of the statute.[10]
ISSUE NO. 3Attorney Fees.
Considering the complexity of the issues concerning violation of LSA-R.S. *1116 23:1361, and the amount of research and study required in preparing the appellate brief, we conclude that an award of $4,500.00 in attorney fees is not an abuse of discretion. Turner v. Winn Dixie Louisiana, Inc., supra.

CONCLUSION
The judgment is AFFIRMED with all costs assessed against the defendant.
NOTES
[1] § 1361. Unlawful discrimination prohibited

A. No person, firm or corporation shall refuse to employ any applicant for employment because of such applicant having asserted a claim for worker's compensation benefits under the provisions of this Chapter or under the law of any state or of the United States. Nothing in this Section shall require a person to employ an applicant who does not meet the qualifications of the position sought.
B. No person shall discharge an employee from employment because of said employee having asserted a claim for benefits under the provisions of this Chapter or under the law of any state or of the United States. Nothing in this Chapter shall prohibit an employer from discharging an employee who because of injury can no longer perform the duties of his employment.
C. Any person who has been denied employment or discharged from employment in violation of the provisions of this Section shall be entitled to recover from the employer or prospective employer who has violated the provisions of this Section a civil penalty which shall be the equivalent of the amount the employee would have earned but for the discrimination based upon the starting salary of the position sought or the earnings of the employee at the time of the discharge, as the case may be, but not more than one year's earnings, together with a reasonable attorney's fee.
[2] At the time of the accident the relevant law provided as follows:

LSA-R.S. 23:1202 Maximum and minimum amounts payable
A.... For injuries occurring on or after September 1, 1977, and before July 1, 1983, the maximum weekly compensation to be paid under this Chapter shall be sixty-six and two-thirds percent of the average weekly wage paid in all employment subject to the Louisiana Employment Security Law, and the minimum compensation shall be not less than twenty percent of such wage, said maximum and minimum to be computed to the nearest multiple of one dollar...
B. For the purposes of this Chapter, the average weekly wage in all employment subject to the Louisiana Employment Security Law shall be determined by the administrator of the office of employment security on or before August 1 of each year as of the quarter ending on the immediately preceding March 31 of each year. The average weekly wage so determined shall be applicable for the full period during which compensation is payable when the date of occurrence of injury falls within the twelve-month period commencing September 1 following the determination. [emphasis added]
LSA-R.S. 23:1221 Temporary, permanent, or partial disability; schedule of payments
* * * * * *
(4) In the following cases, the compensation shall be as follows:
(a) For loss of a thumb, sixty-six and two-thirds per centum of wages during fifty weeks.
(b) For the loss of a first finger, commonly called the index finger, sixty-six and two-thirds per centum of wages during thirty weeks.
(c) For the loss of any other finger, or a big toe, sixty-six and two-thirds per centum of wages during twenty weeks.
* * * * * *
(e) For the loss of a hand, sixty-six and two-thirds per centum of wages during one hundred fifty weeks.
* * * * * *
(o) In all cases involving a permanent partial loss of the use or function of the members mentioned hereinabove, compensation shall bear such proportion to the amounts named herein for the total loss of such members as the disability to such members bears to the total loss of the member, provided that in no case shall compensation for an injury to a member exceed the compensation payable for the loss of such member. [emphasis added]
[3] The record does not reveal the determination of the plaintiff's weekly wages as required by LSA-R.S. 23:1202 B. As such, there is no direct evidence that restriction of LSA-R.S. 23:1221(4)(o), limiting the plaintiff's total possible award to 5% of the entitlement authorized under LSA-R.S. 23:1221(4)(e), results in a sum less than the statutory minimum of LSA-R.S. 23:1202 A. It is apparent, however, from both parties' briefs that such was the case and that this minimum weekly amount is conceded to be $55.00.
[4] See footnote 2.
[5] See footnote 1.
[6] We decline to follow a contrary position expressed in Vallier v. Oilfield Const. Co., Inc., 483 So.2d 212 (La.App.3d Cir.1986).
[7] Defendant's exhibit 6 reflects a system of disciplinary measures which all parties were aware of. This evidence provided, in relevant part, as follows:

CONDUCT AND DISCIPLINE
Acceptable conduct must be practiced and effective discipline maintained for the protection of individual employees, for the promotion of good working relationships and for the efficient operation of the mill. It is the policy of the company, therefore, to specify the type of conduct expected of employees and to enforce these standards of conduct in a fair and impartial manner.
The below offenses have been set forth as improper conduct. These offenses, however, are not all inclusive and the causes for discipline and/or discharge will not be limited to those listed below.
Since some types of conduct are more offensive than others, they have been divided into two groups governed by the seriousness of the offense.
GROUP I
First Offense Written Reprimand
Second Offense Written Reprimand
 and 4 days suspension
 without pay
Third Offense Written Reprimand
 and 7 days suspension
 without pay
Fourth Offense Discharge
GROUP I
. . . . . .
(2) Failure to comply with safety rules or use safety equipment.
. . . . . .
(9) Failure to properly notify the company when absent from work.
(10) Failure to give a satisfactory reason for an absence or absences from work.
. . . . . .
(18) Negligence resulting in or which could have resulted in serious injury to another employee or to company.
GROUP II
First OffenseDischarge
. . . . . .
(17) Dishonesty
(18) Falsifying Reports or Records [emphasis added]
. . . . . .
[8] The written reprimand was for violating rule 18 under Group I offenses. The reprimand was given because plaintiff's negligent conduct resulted in the injury to his ring finger.
[9] Q. Does it matter that any dates of absences... that the only dates that he testified he wasn't working he was either under a doctor's order or undergoing substantial pain, would he still have been discharged?

A. If he was under a doctor's orders, no.
Q. Do you require your workers to work in pain?
A. No. They are not going to do me any good if they are in pain.
[10] We note the defendant's admission that the plaintiff was not fired because the injury precluded him from performing his work properly, in addition to the other significant factors mentioned, distinguishes this case from that in Vollenweider v. New Orleans Public Service, 466 So.2d 804 (La.App.4th Cir.1985), writ denied, 468 So.2d 577 (La.1985).