506 So.2d 1345 (1987)
Percy J. GREEN, Plaintiff-Appellant,
v.
JACKSON RAPID DELIVERY SERVICE INC., et al., Defendants-Appellees.
No. 18692-CA.
Court of Appeal of Louisiana, Second Circuit.
May 6, 1987.
*1347 James E. Franklin, Jr., Shreveport, for plaintiff/appellant.
Mayer, Smith & Roberts by Walter O. Hunter, Jr., Shreveport, for defendants/appellees.
Before JASPER E. JONES, FRED W. JONES and NORRIS, JJ.
JASPER E. JONES, Judge.
Percy J. Green, plaintiff in this worker's compensation suit, appeals a judgment rejecting his demands for disability benefits, penalties and attorney's fees. The defendants are the Jackson Rapid Delivery Service, Inc., the appellant's former employer, and Nationwide Mutual Insurance Company, the employer's worker's compensation insurer.
We reverse and award disability benefits.

FACTS
The appellant asserts he was injured on June 15, 1985, while working as a truck driver for his employer, that the accident resulted in a cervical and lumbar strain which aggravated an existing "degenerative *1348 cervical disc disease," that the accident rendered him disabled to resume truck driving employment and that the defendants have arbitrarily refused to pay worker's compensation benefits for an undetermined period of disability since September 19, 1985. He prayed for continuing disability compensation since this date based upon the maximum rate allowed by law with credit given for prior disability benefits received and for interest, medical expenses", attorney fees, penalties and for all costs including expert witness fees. The defendants filed an answer on April 14, 1986, denying the appellant's claims and affirmatively asserted that if any additional amounts were awarded for disability after September 19, 1985, then a credit should be granted not only for the prior disability payments but also for unemployment compensation drawn by the appellant from July 13, 1985-January 7, 1986, in violation of LSA-R.S. 23:1225(B).[1]
The defendant propounded certain pretrial written interrogatories and the plaintiff's answers established the following: (1) that he had worked previously as a truck driver and a fork lift operator; (2) that he had applied for employment as a truck driver since his accident with five companies; and (3) he had commenced collecting unemployment compensation beginning shortly after the accident and ending the week of January 4, 1986.
The trial court ruled the plaintiff had failed to establish he is entitled to any more worker's compensation benefits as:
(1) plaintiff applied for and received unemployment benefits during the period that he was also receiving worker's compensation benefits and that one of the requirements to entitlement to unemployment compensation is a representation that the appellant is able to work;
(2) the plaintiff actively applied for numerous truck driving jobs; and
(3) the plaintiff obtained no medical treatment for several months prior to seeing his latest treating physician on January 13, 1986.
Judgment was rendered rejecting the plaintiff's demands and assessing him costs and expert witness fees. Only the plaintiff has appealed.
The appellant's assignment of errors present the following issues for decision:
(1) Did the trial court err in finding the plaintiff was not entitled to additional disability payments?
(2) Did the trial court err in holding appellant's receipt of unemployment benefits equated to a "credit" due the defendants and appellant was not entitled to any additional worker's compensation?
(3) Was the trial court clearly wrong in not assessing statutory penalties and attorney fees?
Issues 1 and 2Was the trial court wrong in finding that the appellant was not disabled?

LAW ON THE REVIEW OF DETERMINATIONS OF DISABILITY IN WORKER'S COMPENSATION SUITS
The finding of disability within the framework of the worker's compensation law is a legal rather than purely a medical determination. The claimant has the burden of proving to a legal certainty, and by a reasonable preponderance of the evidence, the nature and extent of a disability. In a particular case the totality of the evidence, both medical and lay testimony, must be examined by the trial court in making its determination on the question of disability and it is the function of the trial court to assess the weight to be accorded such testimony. The opinion of a physician or other medical expert does not necessarily determine a legal disability and the trial court may accept or reject the opinion expressed by a medical expert depending upon what impression the qualifications, credibility and testimony of that expert *1349 makes upon the court. As a general rule, the testimony of a treating physician should be given more weight than that of a physician who examines a claimant for diagnostic purposes. The positive findings of medical experts are to be afforded greater weight than the negative findings as to the existence or not of a particular condition. Barry v. Western Elec. Co., Inc., 485 So.2d 83 (La.App. 2d Cir.1986), writ den., 487 So.2d 441 (La.1986).
A trial court may take into consideration the fact that a claimant designated he was able and available to work in applications for unemployment compensation in making a determination as to the existence of a disability. Wright v. Insurance Co. of North America, 491 So.2d 161 (La.App. 3d Cir.1986). Where a pre-existing condition is alleged to have been aggravated by an on-the-job injury to the point of disability, the appellant must also establish the aggravation by a preponderance of the evidence. Cedotal v. Wausau Ins. Co., 497 So.2d 395 (La.App. 3d Cir.1986), writ den., 498 So.2d 757 (La.1986). In order to establish total and permanent disability a claimant must prove by clear and convincing evidence that he is unable to perform any type of work. In order to establish temporary total disability the claimant is only required to prove his disability by a preponderance of the evidence. He is entitled to an award for temporary total disability if he establishes he is disabled to do the same occupation or other gainful occupation at the time of trial, though it appears he will be able to return to some type work in the forseeable future. Brewster v. Manville Forest Products Corp., 469 So.2d 340 (La. App. 2d Cir.1985); Price v. Fireman's Fund Insurance Co., 502 So.2d 1078 (La. 1987); LSA-R.S. 23:1221(1), (2).[2] A claimant is entitled to temporary total disability if he fits in the "odd lot" category in that he can perform no services other than those which are so limited in quality, dependability or quantity that a reasonably stable market for them does not exist. This determination is made after scrutiny of the evidence of the claimant's physical and mental capacity, education and training. Thomas v. Elder Pallet & Lumber Sales, Inc., 493 So.2d 1267 (La.App. 3d Cir.1986). An employee who can only perform his work in pain is entitled to a temporary total disability award. Johnson v. Monroe Pulpwood Co., Inc. 505 So.2d 862 (La.App. 2d Cir.1987).
A trial court's factual findings in worker's compensation cases are entitled to great weight and reasonable evaluations of credibility and reasonable inferences of fact must not be disturbed, even though the appellate court may feel that its own evaluations and inferences are as reasonable. *1350 Guye v. International Paper Co., Inc., 488 So.2d 1108 (La.App. 2d Cir.1986). The manifest error rule is applicable where the trial court's factual findings of non-disability is based partly upon depositions and partly upon in-court testimony. Dominick v. CNA Ins. Co., 497 So.2d 758 (La.App. 3d Cir.1986).
Did the plaintiff-appellant establish a legal disability?
The appellant asserts the trial court found that he was entitled to additional disability payments but that the "credit" from the unemployment benefits received off-set this entitlement. The record shows that the trial court made no such determination and we shall not address this issue.
The appellant asserts he has been disabled since the June 15, 1985, accident and this disability continued through the time of trial and that such condition was causally related to his accident.
The appellant was injured on June 15, 1985, when his tractor-trailer rig overturned in Dallas, Texas. He had been employed by defendant/employer for 1½ years with no other history of injury. Appellant was unconscious following the accident and was taken to Parkland Hospital in Dallas and was released the next day. He returned to Shreveport, Louisiana on June 21, 1985, and sought medical care from Dr. Rudolph Forbing, his family physician. He complained to Dr. Forbing of chest and neck pain. Dr. Forbing's examination revealed muscle spasm on each side of appellant's neck and Dr. Forbing diagnosed appellant's injuries as a contusion of the chest and cervical strain. Dr. Forbing prescribed a muscle relaxant drug and pain medication for appellant. Dr. Forbing believed appellant would be able to return to work in one week and wrote appellant a work release slip for June 28, 1985. The appellant testified that his immediate boss met with him on the date of the release and informed him that his employment was terminated and that he could not draw worker's compensation but that he should apply for unemployment.
The appellant immediately applied for the unemployment disability benefits and received them from the first of July, 1985 through the week ending January 4, 1986. Appellant actively sought employment in accordance with unemployment benefit requirements but stated he fully informed the Office of Employment Security and each of his prospective employers of his physical condition and that he could only drive for short periods and could not participate in loading and unloading.
The appellant met with Sandy Prudhomme, adjuster for the insurance carrier, in mid-July and informed her of his neck and back pain and she made him an appointment with Dr. Don Burt. Dr. Burt examined appellant on September 5, 1985, and made a diagnosis of "History of myoligamentous strain involving the cervical and lumbar areas." At the time of the examination the appellant complained of neck and back pain but the findings of Dr. Burt were essentially negative. Dr. Burt recommended a series of exercises and expressed the opinion that appellant could return to work in two weeks. The insurer paid compensation through September 19, 1985 but paid no further compensation.
Appellant continued to have neck and back pain but did not return to Dr. Forbing or Dr. Burt. Appellant, upon the recommendation of a fellow truck driver, sought and obtained an appointment with Dr. Goodman, an orthopedic surgeon in Shreveport. Appellant asserted this appointment was made by Sandy Prudhomme's office, but this was denied by the adjuster. Dr. Goodman was unaware of who had made the appointment.
Dr. Goodman examined appellant on January 13, 1986, and found tenderness in the cervical spine with 50% limitation of motion in the cervical and lumbar spine. X-rays revealed degenerative changes in the cervical spine. Dr. Goodman's diagnosis was cervical and lumbar strain, early degenerative cervical disc disease. Dr. Goodman recommended physical therapy and stated appellant was unable to work.
Dr. Goodman next examined the appellant on January 21, 1986, at which time there was no improvement and no change *1351 in the finding on examination. Physical therapy was commenced on January 21, 1986 and continued through March 25, 1986. There were 21 exhaustive treatments culminating in a "back school" for four hours.
An examination of appellant by Dr. Goodman on February 21, 1986, revealed muscle spasm in appellant's neck with the findings otherwise unchanged. Dr. Goodman expressed the opinion there was some gradual improvement following the initiation of physical therapy. The next examination was on March 21, 1986, and the appellant reported minimal improvement. Examination revealed tenderness and spasm in the neck. Dr. Goodman recommended on that date that an independent examination by another orthopedic surgeon be conducted as he could not explain the appellant's prolonged symptoms of pain. Dr. Goodman next examined appellant on April 22, 1986. He testified that, in his opinion, the accident aggravated a pre-existing degenerative change in the neck. When asked to account for the appellant's lack of limitation of motion in Dr. Burt's September 5, 1985, examination as compared to a 50% limitation of neck and back motion found by Dr. Goodman in January, Dr. Goodman explained with some neck and back injuries the patients have good days and that the appellant could have had a "heck of a good day" on the date of Dr. Burt's finding of no limitation of motion. Dr. Goodman also testified that on April 22, 1986, appellant was showing some improvement but that he was unable to return to work as a truck driver at the time, though he could do some type of light office work. Dr. Goodman expressed the opinion that appellant would be well in sixty days following this examination and at that time could return to work as a truck driver.
Marshall Cowley, physical therapist for the Tretjen Physical Therapy Clinic, testified by deposition that the appellant had undergone therapy from January 21, 1985-March 19, 1986. He also related that the appellant had a 25%-30% limitation of motion in the cervical and lumbar area. The therapist related that upon his first examination of the appellant he discovered evidence of muscle spasm.
We conclude the trial court was clearly wrong in not finding that the appellant had proven by a preponderance of the evidence a temporary total disability caused by the truck accident extending from June 15, 1985 to June 22, 1986. It is evident the trial court placed great weight upon the fact that the appellant represented to the unemployment compensation personnel and to prospective employers that he was able to resume his truck driving employment and upon the fact that he obtained no medical treatment for several months prior to seeing Dr. Goodman. It is also clear that Dr. Forbing and Dr. Burt's diagnoses and work releases were also given controlling weight. However, the appellant's unemployment compensation activities are only one consideration to be taken into account and must be scrutinized in light of his testimony relating that his employer directed him to seek such benefits when he was terminated from his job. His supervisor, H.M. Cartwright, did not specifically deny appellant was directed to seek these benefits but related that he did not remember if he told the appellant to pursue unemployment as no worker's compensation would be forthcoming. H.M. Cartwright stated he frequently advised terminated employees to seek unemployment benefits. In addition, Dr. Forbing's testimony, in regard to his ultimate conclusions, should not be afforded great weight as this physician testified he was a general practitioner who conducted a "pretty superficial" examination. Dr. Burt's medical opinion must be analyzed in light of the lesser weight mandated by the jurisprudence as he was selected by the insurer for diagnostic purposes and Dr. Goodman was the appellant's treating physician who found limitation of neck and back motion, tenderness in these areas and objective evidence of the disability in the form of degenerative cervical disease and muscle spasms. Barry v. Western Electric Co., Inc., supra. Dr. Goodman's finding of muscle spasm and limitation of motion in the neck and back area was fully corroborated by the *1352 testimony of the physical therapist, and evidence of muscle spasms was found in Dr. Forbing's examination.
The totality of the record reveals an individual with no history of neck and back problems who has a 12th grade education and a long, regular work history of truck driving and manual labor and who was involved in a very serious accident on June 15, 1985, which caused him to lose consciousness and necessitated treatment in a hospital. His initial treating physician, Dr. Forbing, found evidence of muscle spasm. Continued complaints of pain resulted in the defendant insurer selecting Dr. Burt to examine appellant. This physician, on a September 5, 1985 examination, found appellant would be able to return to work on September 19, 1985. Approximately four months later the appellant was examined and treated by Dr. Goodman. The record reflects appellant continued to have neck and back pain during this four month period. The record does not reflect the date the appointment with Dr. Goodman was made, but it frequently takes many weeks to obtain appointments with medical specialists. Considering these circumstances, the elapse of four months between the examination by Dr. Burt and the commencement of treatment by Dr. Goodman does not create any adverse presumption against the causal connection of the disabling condition found by Dr. Goodman and the June 15, 1985, compensable accident. Dr. Goodman, whose examinations revealed objective evidence in the form of degenerative cervical disease and muscle spasms, as well as motion limitation of the neck and back, testified that the appellant probably would be able to fully return to his truck driving duties on June 22, 1986, and that the cause of this disability was the appellant's accident on June 15, 1985. Dr. Goodman believed appellant could do light office work as of April 22, 1986. However, this type work is far removed from the type of marketable skills appellant has as a truck driver and a fork lift driver, which are his only areas of past work experience.
The evidence establishes an individual with a long, excellent work history, who was in good health and who had no disability prior to the accident but whose symptoms of disability commenced with the accident and have continued to manifest themselves in the form of subjective lower back and neck pain in addition to muscle spasms. There is a reasonable casual connection between the accident and the disabling condition. There is no evidence of any intervening cause of these symptoms and under these facts there arises a presumption that the accident was the legal cause of the instant disabling condition. Droddy v. Cliff's Drilling, Inc., 471 So.2d 223 (La.1985). Trial was held on July 11, 1986, and appellant testified he still had neck and back pain and was unable to return to work as a truck driver. Appellant presented no medical evidence to substantiate his claim to continued disability. He testified he had made several appointments with Dr. Goodman during the period between April 22, 1986, when he was last examined by Dr. Goodman and the trial date, but that the various appointments had all been cancelled by either him or the doctor. We conclude that the appellant has only established by a preponderance of the evidence temporary total disability through June 22, 1986, based upon Dr. Goodman's testimony following his examination of April 22, 1986, and we deny appellant's claim for compensation beyond this date.
The record shows the parties stipulated the proper compensation rate would be based upon 662/3% of the average weekly wage reflected upon exhibit P-9 which was admitted into evidence. This exhibit shows the appellant's weekly earning from January 21, 1985 to June 14, 1985, and reflects an actual average weekly wage of $336.87. This weekly average, when multiplied by 662/3% results in a compensation rate of $224.56 per week which is less than the maximum legal compensation rate of $248.00 per week as determined for this time period by the Louisiana Employment Security Law. LSA-R.S. 23:1202.[3]
*1353 The defendants are due a credit for the total unemployment compensation benefits received by the plaintiff. This credit is due as LSA-R.S. 23:1225 was amended by Acts 1983,1st Ex.Sess, No. 1, § 1, effective July 1, 1983, to provide for the deduction of unemployment benefits previously received by claimant.[4] The plaintiff's answers to pretrial written interrogatories show he received unemployment benefits at the rate of $179.00 per week for two months and then at the rate of $181.00 per week until January 4, 1986. At trial the plaintiff testified these benefits began the first of July, 1985. The credit due the defendants amounts to $179.00 per week for the compensable weeks beginning July 1, 1985, and ending August 31, 1985, and to $181.00 per week for the compensable weeks beginning September 1, 1985, and ending January 4, 1985.
The record establishes Dr. Goodman's outstanding medical bill, in the amount of $334.00, and the fee due the physical therapy clinic in the amount of $1,530.00, have not been paid by the defendants.
Issue # 3Attorney fees and penalties
LAW ON AN AWARD OF ATTORNEY FEES AND PENALTIES IN WORKER'S COMPENSATION SUITS
An assessment of penalties is proper for the nonpayment of compensation benefits unless the nonpayment results from conditions over which the employer or insurer had no control or unless the employee's right to such benefits had been reasonably controverted. LSA-R.S. 23:1201 E.[5] The claimant's right to such benefits will be deemed to have been reasonably controverted if the employer or insurer had sufficient factual and medical information to reasonably counter the factual and medical information presented by the claimant. Theriot v. American Employees Ins. Co., 482 So.2d 648 (La.App. 3d Cir.1986).
*1354 An award of attorney fees is proper where the failure to make compensation payments is found to be arbitrary, capricious or without probable cause. LSA-R.S. 23:1201.2.[6] Whether liability for attorney fees is proper depends primarily upon the facts known to the employer or insurer at the time of the action. Hughes v. General Motors Guide Lamp Div., 469 So.2d 369 (La.App. 2d Cir.1985).
Should attorney fees and penalties be awarded?
Testimony was received from Sandy Prudhomme, adjuster for the defendant, Nationwide Insurance. The witness testified she received this particular adjustment assignment on July 17, 1985, and thereafter interviewed the appellant on July 18, 1985, and July 22, 1985, concerning his accident. As a result of this information two checks were issued at the maximum weekly worker's compensation rate for a total payment of $3,436.58 and covering a period from June 14, 1985August 18, 1985 and from August 19, 1985September 19, 1985.
No additional payments were made as it was believed that the medical releases of Dr. Forbing and Dr. Burt established that the appellant was no longer disabled and could return to work. The adjuster admitted that appellant's physician, Dr. Goodman, and a physical therapist started sending bills for treatment, but these were not paid because two prior medical doctors had examined the appellant and released him for work and because defendants learned appellant had been drawing unemployment and actively seeking a job in the long interim between the examination of Dr. Burt on September 5, 1985, and the start of Dr. Goodman's treatment on January 13, 1986. These facts establish there existed a legitimate dispute not only as to the existence of a disability but also as to whether any disability that Dr. Goodman had confirmed was causally related to the accident of June 15, 1986. Under these circumstances, no penalties are appropriate as the appellant's claims were reasonably controverted and no attorney fees are due as the defendant's action cannot be deemed arbitrary, capricious or without probable cause.

CONCLUSION
The judgment rejecting plaintiff's demands for compensation benefits is reversed and set aside and there shall be judgment herein awarding plaintiff compensation benefits as follows, to-wit:
IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of the plaintiff, PERCY J. GREEN, and against the defendants, JACKSON RAPID DELIVERY SERVICE, INC. and NATIONWIDE MUTUAL INSURANCE COMPANY, in solido, awarding plaintiff weekly temporary total disability compensation benefits in the amount of $224.56 per week commencing June 15, 1985 and extending to June 22, 1986, together with judicial interest on each past due installment from due date until paid, subject to a credit for $3,436.58 previously paid by said defendants, and subject to a credit for unemployment benefits received by plaintiff at the rate of $179.00 per week from July 1, 1985, until August 31, 1985, and at the rate of $181.00 per week from September 1, 1985, until January *1355 4, 1986, and that there further be judgment in favor of said plaintiff and against said defendants, in solido, in the full sum of $1,864.00, representing the unpaid medical bill of Dr. Goodman and physical therapy bill of Tretjen Physical Therapy Clinic, together with judicial interest on said unpaid medical expenses from date of judicial demand until paid.
The expert witness fees of Drs. Rudolph R. Forbing, Carl G. Goodman, Don H. Burt and Marshall Cowley are hereby set at $100.00 each.
All costs of court in the trial court and on appeal are assessed against the defendants.
NOTES
[1] § 1225. Reductions when other benefits payable

. . . . .
B. No compensation benefits shall be payable for temporary or permanent total disability or supplemental earnings benefits under this Chapter for any week in which the employee has received or is receiving unemployment compensation benefits, ...
[2] § 1221. Temporary total disability; permanent total disability; supplemental earnings benefits; permanent partial disability; schedule of payments

Compensation shall be paid under this Chapter in accordance with the following schedule of payments:
(1) Temporary total. For injury producing temporary total disability of an employee to engage in any self-employment or gainful occupation for wages whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training, or experience, sixty-six and two-thirds percent of wages during the period of such disability.
(2) Permanent total.
(a) For any injury producing permanent total disability of an employee to engage in any selfemployment or occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured, and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training, and experience, sixty-six and two-thirds percent of wages during the period of such disability.
(b) For purposes of Subparagraph (2)(a) of this Paragraph, whenever the employee is not engaged in any employment or self-employment as described in Subparagraph (2)(b) of this Paragraph, compensation for permanent total disability shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self-employment, including, but not limited to, any and all odd-lot employment, sheltered employment, or employment while working in any pain, notwithstanding the location or availability of any such employment or self-employment.
. . . . .
[3] § 1202. Maximum and minimum amounts payable

A. The maximum compensation to be paid under this Chapter for injuries occurring on or after September 1, 1975, and on or before August 31, 1976, shall be eighty-five dollars per week and a minimum compensation shall be twenty-five dollars per week; and for injuries occurring on or after September 1, 1976, and on or before August 31, 1977, the maximum weekly compensation to be paid under this Chapter shall be ninety-five dollars per week and the minimum compensation shall be thirty dollars per week. For injuries occurring on or after September 1, 1977, and before July 1, 1983, the maximum weekly compensation to be paid under this Chapter shall be sixty-six and two-thirds percent of the average weekly wage paid in all employment subject to the Louisiana Employment Security Law, and the minimum compensation shall be not less than twenty percent of such wage, said maximum and minimum to be computed to the nearest multiple of one dollar. For injuries occurring on or after July 1, 1983, the maximum weekly compensation to be paid under this Chapter shall be seventy-five percent of the average weekly wage paid in all employment subject to the Louisiana Employment Security Law, and the minimum compensation for total disability shall be not less than twenty percent of such wage, said maximum and minimum to be computed to the nearest multiple of one dollar. There shall be no minimum compensation for benefits payable pursuant to R.S. 23:1221(3) or (4). In any case where the employee was receiving wages at a rate less than the applicable minimum compensation, the compensation shall be the employee's "wages".
B. For the purposes of this Chapter, the average weekly wage in all employment subject to the Louisiana Employment Security Law shall be determined by the administrator of the office of employment security on or before August 1 of each year as of the quarter ending on the immediately preceding March 31 of each year. The average weekly wage so determined shall be applicable for the full period during which compensation is payable when the date of occurrence of injury falls within the twelve-month period commencing September 1 following the determination.
[4] AN ACT

To amend and reenact R.S. 23:1021, 1081, 1102, 1123, 1141 through 1143, 1201, 1201.2, 1202, 1203, 1206, 1209, 1221, 1222, 1223, 1225,... to provide for deduction and reduction of benefits when other benefits are payable ... [emphasis added] See footnote # 1, supra.
[5] § 1201. Time and place of payment; penalties

. . . . .
E. If any installment of compensation payable without an order is not paid within the time period provided in Subsections (B), (C), or (D), of this Section, there shall be added to such unpaid installment a penalty of an amount equal to twelve percent thereof, which shall be paid at the same time as, and in addition to, such installment of compensation, unless such nonpayment results from conditions over which the employer or insurer had no control. Whenever the employee's right to such benefits has been reasonably controverted by the employer or his insurer, the penalties set forth in this Subsection shall not apply.... [emphasis added]
[6] § 1201.2. Failure to pay claims; discontinuance; attorney's fees

Any insurer liable for claims arising under this Chapter, and any employer whose liability for claims arising under this Chapter is not covered by insurance, shall pay the amount of any claim due under this Chapter within sixty days after receipt of written notice. Failure to make such payment within sixty days after receipt of notice when such failure is found to be arbitrary, capricious, or without probable cause, shall subject employer or insurer, in addition to the amount of the claim due, to payment of all reasonable attorney's fees for the prosecution and collection of such claim, or in the event a partial payment or tender has been made, to payment of all reasonable attorney's fees for the prosecution and collection of the difference between the amount paid or tendered and the amount due. Any employer or insurer who at any time discontinues payment of claims due and arising under this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the payment of all reasonable attorney's fees for the prosecution and collection of such claims. [emphasis added]