535 So.2d 990 (1988)
Harvey OWENS, Appellant,
v.
GEORGIA PACIFIC CORPORATION, Appellee.
No. 19672-CA.
Court of Appeal of Louisiana, Second Circuit.
October 26, 1988.
*991 Murphy J. White, Mansfield, for appellant.
*992 Plummer, Means & Burgess by Robert E. Plummer, Mansfield, for appellee.
Before HALL, C.J., and MARVIN, JASPER E. JONES, FRED W. JONES, Jr. and SEXTON, JJ.
FRED W. JONES, Jr., Judge.
Plaintiff appealed a judgment rejecting his demands for worker's compensation benefits, for wrongful termination, penalties and attorney fees. For the following reasons, we affirm.[*]
On May 29, 1983, the plaintiff was employed as an operator on the glue line at the Georgia-Pacific Plant in Logansport on the graveyard shift. During the ten minute break around midnight, plaintiff started to the restroom. Hurrying down the stairs, he slipped and fell after stepping in glue water on the floor at the foot of the staircase, striking the back of his shoulders and head.
After supervisory personnel arrived at the scene of the accident, plaintiff was taken to the first-aid room where ice was applied to his back. He was instructed to go to the office of Dr. Dillard, a general practitioner in Mansfield, the company doctor, the next morning.
Dr. Dillard's medical records indicated that he examined plaintiff on June 2, 1983 for the injury resulting from the slip-and-fall accident. The physician testified that plaintiff had no external signs of injury, but complained of pain to his right upper back and shoulder. After prescribing a mild muscle relaxer, Dr. Dillard instructed plaintiff to rest a couple of days and return to work on June 6, 1983.
Defendant's personnel manager telephoned plaintiff and instructed him to come to the plant on June 6, 1983. Upon complying with the order, plaintiff was asked if he could work. When plaintiff refused to return to work because he was "still under the doctor", he was fired for excessive absenteeism. According to the record, plaintiff had a history of absenteeism and had received several documented warnings.
On June 7, 1983, plaintiff consulted and began treatment with Dr. Kelly, a Mansfield chiropractor. Plaintiff asserted that he took this action because the prescription given to him by Dr. Dillard did not relieve his pain. Dr. Kelly, who treated plaintiff over a period of several months, testified that his patient had received serious injuries to his back as a result of the accident. This opinion was based on subjective findings as well as objective observation of muscle spasms. The chiropractor did not believe plaintiff was able to return to work until October 5, 1983.
Two other medical experts, Dr. J.A. Smith, orthopedic surgeon, and Dr. John Greer, radiologist, after examining medical reports and X-rays taken by Dr. Kelly, supported defendant's position that plaintiff should have been able to return to work when discharged by Dr. Dillard.
Plaintiff argued that he was entitled to worker's compensation benefits until he was discharged by Dr. Kelly. Plaintiff's testimony concerning his complaints of pain and disability was corroborated by that of his wife.
In a written opinion the trial court made the following findings of fact:
1) Plaintiff slipped and fell while working for Georgia-Pacific on or about May 29, 1983.
2) On June 2, 1983 plaintiff first saw Dr. Dillard.
3) Dr. Dillard, who had treated plaintiff on numerous occasions in the past, diagnosed the injury as a minor strain or sprain to the neck and shoulder area, treated the patient conservatively and concluded he could return to work on June 6, 1983.
4) Dr. Dillard communicated with the employer and advised plaintiff was free to return to work on June 6, 1983.
5) Plaintiff returned to work on or about June 6, 1983, informed his supervisor he could not perform a required, work-related task and was terminated.

*993 6) Plaintiff was seen by Dr. Kelly, who treated him for five months and released him to return to work.
Concluding that plaintiff had failed to discharge his burden of proving disability or wrongful termination, the trial court dismissed his demands. Plaintiff appealed, contending the trial erred in 1) denying worker's compensation benefits from May 29, 1983 to October 5, 1983 and 2) ruling plaintiff was not entitled to penalties and interest under La.R.S. 23:1361 for wrongful termination.
It is a well settled legal principle that the trial court's factual findings in workmen's compensation cases are entitled to great weight. Ducote v. J.A. Jones Construction Co., 471 So.2d 704 (La.1985); Crump v. Hartford Accident and Indemnity Co., 367 So.2d 300 (La.1979); Green v. Jackson Rapid Delivery Service, 506 So.2d 1345 (La.App.2d Cir.1987). A reasonable evaluation of credibility and reasonable inferences of fact should not be disturbed even though the appellate court may feel that its own evaluations and inferences are as reasonable. This reasoning is based upon the trial court's greater opportunity and capacity to evaluate live witnesses as compared with the appellate court's access to only a cold record. Ducote, supra; Cadiere v. West Gibson Products Co., 364 So.2d 998 (La.1978).
La.R.S. 23:1317 requires that all findings of fact must be based on competent evidence. The appellate court may not overturn a finding of fact made by a trial court unless there is clear error, particularly where the weight of evidence involves credibility determinations. Louisiana Hospital Association Workmen's Compensation Group Self Insurance Fund v. Auguillard, 503 So.2d 1118 (La.App.3d Cir. 1987); Ducote, supra.
The trial court is obligated to make a judgment call as to the motive of the employer in discharging the employee and this determination should not be disturbed upon appeal absent manifest error. Turner v. Winn Dixie Louisiana, Inc., 474 So.2d 966 (La.App.5th Cir.1985), writ denied 478 So.2d 147 (La.1985).
In a compensation case, the trial court has the responsibility of determining whether or not the claimant is disabled. Johnson v. Ins. Co. of N. America, 454 So.2d 1113 (La.1984). It is the function of the trial court to assess the weight to be accorded both the medical and lay testimony in order to make its determination on the question of disability. Simpson v. S.S. Kresge Co., 389 So.2d 65 (La.1980). The trial court may accept or reject the opinion of a physician or medical expert depending upon what impression the qualifications, credibility and testimony of that expert makes on the court. Westley v. Pressure Services, Inc., 452 So.2d 354 (La.App.1st Cir.1984); Green, supra.
In this case, as in Barry, supra, the plaintiff was released by the treating physician before going to a chiropractor. In Barry the court found that considering the record as a whole, the trial court was not clearly wrong in its determination that the plaintiff should not be awarded medical expenses for the chiropractic services she received. In this case, both Dr. Greer, a radiologist, and Dr. Smith, an orthopedist, could find no objective evidence that the allegations made by the chiropractor were accurate.
The finding of disability within the framework of the worker's compensation law is a legal rather than a purely medical determination. Calhoun v. Fireman's Fund Ins. Companies, 437 So.2d 900 (La. App.2d Cir.1983); Barry v. Western Electric Co., Inc., 485 So.2d 83 (La.App.2d Cir. 1986), writ denied 487 So.2d 441 (La.1986); Green v. Jackson Rapid Delivery Service, supra.
A claimant may not prove permanent disability by asserting only a subjective belief that the claimant is unable to work. Johnson v. Monroe Pulpwood Co. Inc., 505 So.2d 862 (La.App.2d Cir.1987). The claimant has the burden of proving to a legal certainty, and by a reasonable preponderance of the evidence, the nature and extent of a disability. Campbell v. Luke Const. Co., 465 So.2d 688 (La.1985); Barry, *994 supra; Green, supra. Dr. Kelly stated that he found objective indications that the claimant suffered the injuries he described. However, neither Dr. Dillard, Dr. Smith, nor Dr. Greer could find any objective findings of injuries.
The trial court evaluated all of the medical and lay testimony and found that plaintiff had not proven he was unable to return to work June 6, 1983. We cannot say the trial court was clearly wrong.
The record shows that plaintiff was not able to work from May 29 to June 6. However, La.R.S. 23:1224 provides:
No compensation shall be paid for the first week after the injury is received; provided, that in cases where disability from injury continues for six weeks or longer after date of the accident, compensation for the first week shall be paid after the first six weeks have elapsed.
Since plaintiff was only disabled for one week, he is not entitled to worker's compensation benefits for this period.
Wrongful Termination
The legislature has provided a remedy for an employee who suffers a retaliatory discharge following his filing of a worker's compensation claim in La.R.S. 23:1361, which provides in part:
C. Any person who has been denied employment or discharged from employment in violation of the provisions of this Section shall be entitled to recover from the employer or prospective employer a civil penalty which shall be the equivalent of the amount the employee would have earned but for the discrimination based on the starting salary of the position sought or the earnings of the employee at the time of the discharge, as the case may be, but not more than one year's earnings, together with a reasonable attorney's fee.
The purpose of the anti-discrimination statute is to prevent unjust dismissals and to allow employees to exercise their right to worker's compensation benefits without fear of retaliatory action by their employer. The supreme court has interpreted this statute as a penal statute because it seeks to provide a remedy against an employer for one year's wages if the employer has violated its provisions. Ducote, supra. This court has mandated that since the statute is penal, it must be strictly construed. Guye v. International Paper Co. Inc., 488 So.2d 1108 (La.App.2d Cir.1986); Rambin v. Louisiana Downs, Inc., 482 So.2d 916 (La.App.2d Cir.1986).
La.R.S. 23:1361 creates a civil cause of action as to which the normal civil burden of proof applies. Meyer v. State, Department of Public Safety, 312 So.2d 289 (La.1975). The plaintiff has the burden of proving a violation of La.R.S. 23:1361. Rambin, supra. He must prove that he was discharged from his job solely for the reason that he asserted a claim for Louisiana Worker's Compensation benefits. Moore v. McDermott, Inc., 481 So.2d 602 (La.1986), republished 494 So.2d 1159 (La. 1986). Proof by a preponderance of evidence requires that, taking the evidence as a whole, it shows the fact or cause sought to be proved more probable than not. Moore, supra; Marcotte v. Travelers Insurance Company, 258 La. 989, 249 So.2d 105 (1971).
In Moore there was no evidence of prior reprimands for excessive absences. There the claimant proved three points: he asserted a claim for worker's compensation; he was fired on the very day he purportedly had been told he was medically and physically capable of returning to work; and, most significantly, the company's division personnel administrator testified that compensation claimants were consistently treated differently from other employees who had simply missed a day of work.
No evidence presented here showed that the employer treated persons filing worker's compensation claims differently from other persons missing periods of work. In Locksey v. Capitol Mfg. Co., 517 So.2d 1102 (La.App.3d Cir.1987), the court found that where an employee was called by her employer on the day she was discharged by her doctor and told to return to work and she was not terminated until missing work for three days after the date of release by *995 the doctor, the employer was not held to have wrongfully terminated the employee. There the employee had gone to another doctor for treatment after the release date and before she was officially fired.
In this case, the documentations for excessive absences had all occurred before the accident. See Guye, supra, where the documentation was all accomplished after the accident. No evidence indicated that the employer's attitude changed abruptly after the accident.
The plaintiff provided no evidence that he had filed or that his employer knew he intended to file a worker's compensation claim.
We cannot say the trial court erred in holding plaintiff failed to prove wrongful termination.
Conclusion
For the reasons explained, the judgment of the trial court is AFFIRMED, at appellant's cost.
MARVIN, J., dissents in part, concurs in part, and assigns written reasons.
SEXTON, J., dissents in part and concurs in part for the reasons assigned by MARVIN, J.
HALL, C.J., dissents and assigns written reasons.
MARVIN, Judge, concurring in part, dissenting in part.
As I appreciate this record, plaintiff fell about midnight on Sunday, May 29, 1983. He went to the company physician, Dr. Dillard, on Thursday, June 2, as his supervisor had instructed him to do after the Sunday fall.
Dr. Dillard talked to defendant's plant manager on Thursday, June 2. Dr. Dillard said he "gave [plaintiff] over the weekend to get the soreness out" and told plaintiff he could return to work on June 6 [Monday]. Dr. Dillard's only written medical report, however, was dated and signed on June 14.
Plaintiff knew that he was required to have a written release from the doctor in order to return to work. Dr. Dillard refers to a "route slip" but no copy of this surfaces in this record. Plaintiff denied he was told by Dr. Dillard he could return to work on June 6 and said he was not given a written medical release.
Plaintiff said Jack Dean, the plant manager, telephoned him about returning to the plant after he saw Dr. Dillard. Jack Dean did not testify.
Aaron Williams, plaintiff's supervisor, testified he telephoned plaintiff "about three days before [he fired plaintiff]" because he was "short-handed." He said he "can't actually say the reason for [plaintiff] being fired, because I don't remember."
Plaintiff testified he went to the plant [apparently on June 6] in response to the telephone call. Aaron Williams asked him if he could "kick" or move debris on the floor of the line into the hallway. Plaintiff said he told Williams
I was still under care of Doctor [Dillard]... [I] wasn't going to do it until [the] doctor turned me loose `cause I don't want to hurt no more.
He said "[Aaron Williams] fired me" for the "reason" that "I wouldn't kick that stuff in the hallthe only thing he told me."
The "discharge slip" of June 6 shows plaintiff was fired because of "excessive absenteeism." It was initialed or signed by JAD (Jack Dean), by Gary Henderson, and by BCP (probably supervisor Pearce). Jack Dean did not testify. Others who testified did not refute or contradict plaintiff's version of how and why he was fired.
I conclude plaintiff was fired because the plant was "short-handed" and he told his supervisor(s) that he was still "hurting" from the fall on May 29 and did not want to risk further injury.
Three cases have involved similar circumstances: Ducote v. J.A. Jones Const. Co., 471 So.2d 704 (La.1985); Moore v. McDermott, Inc., 494 So.2d 1159 (La.1986); and Guye v. International Paper Co., Inc., 488 So.2d 1108 (La.App.2d Cir.1986). On the day his doctor released him, Moore was fired because of his "failure to report [for work]." On the day his doctor released *996 him, Guye was fired because of "unexcused absences." Ducote was fired because he did not report his accident on the day it occurred. In each case the ultimate ruling was that the "true" reason for the firing was related to the claim of injury and not to the stated violation of the employer's "rule." In each case § 1361 penalties were awarded. We said in Guye,
The employer did not give as a reason for [the] termination that the plaintiff received an injury and was unable to do the work. The [employer] stretched the facts of a situation out of context to create rule violations just as the [employer] did in Ducote ...
488 So.2d at 1115.
Even if it is found or assumed that Dr. Dillard told defendant's supervisory employees between June 2 and June 6 that this plaintiff was released to return to work on June 6, no supervisory employee, at least in this record, attempted to respond to plaintiff's statement on June 6 that Dr. Dillard had not released him and that he did not want to attempt to work until the doctor told him to do so. No written release to return to work was introduced. Additionally, in a technical sense, plaintiff was not "absent" on June 6. He was at the plant in response to the telephone request to be there and was fired because he said he did not want to risk further injury by attempting to work.
I would award the § 1361 penalties and respectfully dissent from that part of the majority opinion denying penalties.
The trial court's denial of w.c. benefits is based on the testimony of three medical doctors, only one of whom examined plaintiff (Dr. Dillard on June 2). Plaintiff's treating chiropractor saw plaintiff on many occasions between June 7 and October 5. The trial court stated that the extent of plaintiff's temporary disability was a "dead heat" and the testimony of the chiropractor and of Dr. Dillard were assigned "equal weight." The trial court, apparently discounting the lay testimony of plaintiff and his wife, then determined plaintiff had not met his burden of proving [disability under the act].
I conclude that the trial court did not accept or really believe the chiropractor and the lay testimony that plaintiff was disabled until October 5, notwithstanding the trial court's remarks about "dead heat" and "equal weight."
As a reviewing judge, I will defer to the trial court's judgment on the duration of disability issue. In that respect I will concur in the majority opinion.
I believe the preponderance of the evidence on the retaliatory discharge issue compels the conclusion that plaintiff was fired simply because he told his supervisor at the plant that he was still hurting from his May 29 fall and did not want to attempt working and risk further injury until his doctor told him it was safe to do so.
HALL, Chief Judge, dissenting.
I respectfully dissent in part.
I would reverse on the disability issue and award benefits from the date of accident until plaintiff was discharged by the chiropractor in October. On the plaintiff's side you have his testimony, the testimony of his wife, and the testimony of the chiropractor. The trial court found the chiropractor to be creditable but denied benefits for disability based on the one-time examination by Dr. Dillard. Although Dr. Dillard did not find any reason to think there would be any continuing disability, the type of fall plaintiff experienced is consistent with sprains which can linger on and the only doctor who saw plaintiff after Dr. Dillard's examination was the chiropractor. The testimony of the two doctors who testified for defendant but who did not examine plaintiff added little to the case. I believe plaintiff established his temporary disability by a preponderance of the evidence.
On the issue of penalties under LSA-R.S. 23:1361, I would affirm. Although plaintiff's supervisor fired plaintiff for refusing to work a few days after the accident, it was done because the supervisor did not think plaintiff was hurt and not because he was making a compensation claim. He had not asserted a claim at that time. The *997 discharge was not retaliatory or discriminatory.
NOTES
[*] This case was assigned to a five judge panel pursuant to La. Const. Art. 5, § 8(B).